## BROOME *against* BEERS:

### IN ERROR.

A bill of foreclosure need not be brought in the county in which the land lies; as the title of the mortgagee cannot, under such bill, be investigated.

On a bill of foreclosure, it is not necessary to make any incumbrancer, whose equity of redemption has been foreclosed, a party.

The defendant in a bill in chancery, on a plea denying the truth of the plaintiff's allegations, or without plea, may prove any matter of defence.

*A.* executed mortgage deeds of the same land, on the same day, to *B.* and *C.*; and *C.* afterwards assigned his interest to *D.*—*E.* having attached the premises

as the property of *C.*, and recovered a judgment against him, sent an agent to *D.*, who had knowledge of such judgment, to enquire whether there was any priority in favour of the deed under which he claimed ; to which *D.* replied, *there was not ;* that *both deeds were delivered at the same time ;* and that *B. had given a writing to that effect. E.* thereupon took a mortgage of the premises from *C.* to secure his debt, *C.* being, at this time, insolvent. *D.*'s representation, however, was not true ; the deed to *B.* having been. in fact, delivered first. On a bill of foreclosure brought by *D.* against *E.*, it was held, that the plaintiff was precluded, by these facts, from claiming a priority of title.

This was a bill in chancery, brought by *Beers* against *Broome*, before the superior court in *Fairfield* county, to foreclose the equity of redemption in certain mortgaged premises ; and was tried at *Danbury*, *September* term, 1821, before *Brainard*, J. *(a)*.

The facts stated in the bill and found by the court, so far as they affect any question made in this case, are the following. On the 3rd of *February*, 1812, *Isaac Hawley* mortgaged a tract of land lying in *New-Milford*, in *Litchfield* county, to *Truman Minor*, to secure the payment of six promissory notes, amounting to 3143 dollars. Afterwards, on the same day, he mortgaged the land to *William Wright*, to secure the payment of two notes amounting to 5,500 dollars. *Minor* and *Wright*, respectively, obtained decrees of foreclosure against *Hawley*, passed in *February*, 1813, which became absolute on the first *Monday* of *October*, 1813. On the 22nd of *June*, 1814, *Minor* mortgaged the premises to *Daniel Beers*, the plaintiff, and *Philo Booth*, to secure the payment of two notes payable to the plaintiff for 1812 dollars, 32 cents, and for two notes payable to *Booth* for 719 dollars, 47 cents. Subsequently, *Minor* encumbered the premises with other mortgages ; the plaintiff and *Booth*, by a decree of the superior court, in *December*, 1819, foreclosed his equity of redemption and that of the mortgagees under him ; and *Booth* eventually conveyed his interest in the premises to the plaintiff.

On the 10th of *June*, 1815, *Wright* conveyed the premises, by mortgage deed, to *John L. Broome*, the defendant, to secure a judgment for the sum of 1014 dollars, 36 cents. To foreclose the equity of redemption resulting from this conveyance, was the object of the present bill.

On the 30th of *June*, 1812, *Minor* made and delivered to *Wright* a writing in these words : " Whereas I received a mortgage deed of *Isaac Hawley* of certain lands and buildings there-

*(a) Vide* S. C. on a motion for a new trial, 4 *Conn. Rep.* 248.

*Fairfield,*
*June,*
*1826.*

*Broome*
*v.*
*Beers.*

in described, dated the 3rd day of *February*, 1812; and *William Wright* holds a mortgage deed, given and executed by said *Hawley*, of the same lands and buildings, dated the same time and place as mentioned in my said deed ; and whereas my said deed was, by mistake, or misdirection of the bearer of the same to the recorder, entered for record five minutes before the said *William's* deed aforesaid ; therefore, this may certify, that there is to be no priority between the said two deeds, but they are to be considered as both standing on the same ground, and of equal dates, and no priority of date or claim in any respect.

    *Brookfield, June* 30th, 1812.        *Truman Minor.*"

To disprove the facts stated in this writing, parol evidence was admitted ; and those facts were found not to be true. It was farther found, and appears on the record, " That the defendant, after obtaining said judgment against said *Wright*, and before taking said mortgage, applied, by his agent, to the plaintiff, and enquired of him, whether said *Minor's* deed was entitled to priority before said deed to said *Wright ;* and the plaintiff, having full knowledge of said judgment, then informed said agent, that said deeds were delivered at one and the same time, and that said *Minor's* deed was entitled to no priority before said deed to said *Wright*, and that said *Minor* had given a writing to that effect ; and that thereupon the defendant took his said mortgage from said *Wright* on said property, for the security of his said judgment ; that said premises were attached on the original process in favour of the defendant against said *Wright ;* and that, at the time the defendant took his said mortgage, said *Wright* was a bankrupt, having no other property, by which said debt could be secured ; and that his lien by attachment had not expired."

The court then found, that there was due to the plaintiff, on the 28th of *September*, 1821, the sum of 5082 dollars, 81 cents ; and proceeded to pass a decree of foreclosure, in the usual form, against the defendant. To revise this decision, the present writ of error was brought.

The case came before this Court, at *Danbury, June* term, 1825, *Hosmer,* Ch. J. and *Peters* and *Bristol,* Js. being present, and was argued, by *W. Hillhouse* and *N. Smith,* for the plaintiff in error, and by *Daggett* and *Sherman,* for the defendant in error. The judges, on consultation, being divided in opinion, continued it *to advise.* It was argued again, at *Fairfield, June*

term, 1826, *Hosmer*, Ch. J. and *Peters* and *Lanman*, Js. being present, by the same counsel, for the plaintiff in error, and by *Sherman* and *J. Beach*, for the defendant in error.

The counsel for the plaintiff in error, contended. 1. That the superior court in *Fairfield* county had not jurisdiction of the suit, as the mortgaged premises lay in *Litchfield* county, in which alone a suit concerning the title can be brought. *Stat.* 34. *tit.* 6. *c.* 1. *s.* 6. (ed. 1808.) This suit *concerns* the title; as the effect of a decree for the plaintiff is to make a title absolute and perfect in him, which was not so before.

2. That *Minor* and *Wright* were interested in the subject of the suit, and ought to have been made parties.

3. That a larger sum was found due to the plaintiff than he was entitled to receive, as the utmost that the plaintiff could claim, at the time of the decree, was 3607 dollars, 71 cents, whereas the sum found in the decree, is 5082 dollars, 81 cents. The notes, as they are described, furnish, conclusively, the rule of damages; and a departure from it, is error. *Tyler* v. *Marsh*, 1 *Day* 1. *Smith* v. *Allen*, 5 *Day* 337. 340.

4. That the facts found by the court, precluded *Beers* from claiming priority in favour of *Minor's* deed, as the object of such claim is to deprive *Broome* of a title, which he was induced to take, by the express representations of *Beers*, that there was no priority. *Beers* was the proper person to be enquired of respecting the title; *Broome* had a right to make the enquiry; and *Beers*, knowing the object of it, was bound to answer truly. As every man is presumed to know his own title, to excuse himself from the effects of these representations, which he now claims were false, it is incumbent on him to shew, that at the time he made them, he was under a mistake. This he has not done. Nay, the record, so far from furnishing any apology for these misrepresentations, affords the most satisfactory evidence, that at the time he made them, he knew all that he afterwards knew respecting the title.

Equity so far abhors deception, that even the concealment of a fact is deemed a sufficient ground of postponement. *Mocatta* & al. v. *Murgatroyd*, 1 *P. Wms.* 394. Much less is a party permitted to set up a claim in derogation of any inducement, which he has held out, or any representation, which he has made. *Bovey* v. *Smith*, 1 *Vern.* 144. 150. *Hobbs* v. *Norton*, 1 *Vern.* 136. S. C. 2 *Chan. Ca.* 128. *Pearson* v. *Morgan*, 2 *Bro. Ch. Rep.*

384. 389. *Burrowes* v. *Lock*, 10 *Ves.* jun. 470. *Hunsden* v. *Cheney*, 2 *Vern*. 150. *Raw* & ux. v. *Pole*, 2 *Vern*. 239. *Pow. Mort*. 463. *Teasdale* v. *Teasdale*, 2 *Eq. Ca. Abr.* 391. 3 *Bac. Abr.* 48, 9. 252. (*Gwil.* ed.) *Storrs* v. *Barker*, 6 *Johns. Ch. Rep.* 169.

From the facts found to be within the knowledge of the plaintiff, and from the circumstances of the application, he must have been fully aware, that the object of the enquiry was, to ascertain whether the defendant's judgment could be secured, by *Wright's* interest in the property; and whether this was to be done, by levying on the property, or by taking a mortgage, was wholly immaterial.

Neither the bankruptcy of *Wright*, nor the fact that the mortgage was taken for a debt previously contracted, furnished the plaintiff with any apology whatever, for the false representations which he made, or for deceiving the defendant respecting the title of *Minor*, which he then held, or respecting the title of *Wright*. Had not *Wright* been in embarrassed circumstances, there would have been no occasion for making the enquiry. The gist of the defendant's complaint, is, that the plaintiff made false representations respecting the title of a man thus situated ; and that he is now attempting to deprive him of the only security which he has for his judgment, by setting up a title, which he wholly disclaimed, when applied to for information on the subject.

In deciding whether relief shall be granted or not, the enquiry is not, what is the amount of injury,—but what are the assurances and representations which have been made,—what are the reasonable expectations which these have produced,—respecting which the party to whom they were made, ought not to be disappointed. *Teasdale* v. *Teasdale*, 2 *Eq. Ca. Abr.* 391. *Burrowes* v. *Locke*, 10 *Ves.* jun. 470.

The writing given by *Minor*, on the 30th of *June*, 1812, was an admission that there never was any priority in his favour, and fully proved that fact. *Beers & al.* v. *Hawley* & al. 2 *Conn. Rep.* 467. 470. If so, the finding contrary to the fact thus proved, is erroneous.

5. That the plaintiff in error may well avail himself of the facts found by the court, though they were neither stated in the bill, nor shewn by pleading. The case principally relied on, in support of the opposite claim, is *Gaylord & al.* v. *Couch*, 5 *Day* 223. That case, however, differs wholly from the case

before the Court.   There, five judges, in opposition to four, went on the ground, that the committee, assuming the character of solicitors, had made a supplemental bill for *Couch,* and reported a new and distinct set of facts, wholly unconnected with the bill ; on which report the decree was passed.   In the present case, the facts found by the court, originate from, and are immediately connected with, the facts stated in the bill, and go directly to rebut the plaintiff's claim to priority.

The plaintiff's claim is, that he has an equitable right to postpone the defendant.   The defendant says, from what is proved and found, the plaintiff is ousted of such equity, or rather, that he was never entitled to priority.

Will it be claimed, that the chancery proceedings of our courts are to be governed by the *English* chancery practice ? If so, the whole of the proceedings, in the present case, are irregular.   According to their practice, where the defendant appears, a bill will no more be heard, without a plea or answer, than a suit at law ;  and a decree without a plea would be as erroneous as a judgment at law.   If this practice is to be adopted here, be it so ;  and the present decree must be reversed, because there was never any plea or answer.   The court will not establish a rule for this case only.   If the *English* practice is to be adopted, it will not be mutilated.   It will not be adopted in part, and rejected in part.   The court will not say, that facts arising out of, and connected with, the facts stated in the bill, and which, according to our practice, might be proved, shall not be proved to rebut the equity of the plaintiff, unless placed on the record by pleading ;  but that where no plea whatever is given, the proceedings will be sustained.

By the practice in chancery proceedings, which has hitherto prevailed in this state, and has been uniformly sanctioned by our courts, pleas have not been required to bills,—not even a general denial of the facts.   Although the defendant *may* plead, it has never been a *sine qua non* of the hearing of the bill.   On such hearing, the facts stated in the bill have been proved, by the plaintiff ;  and any facts, which, as in cases of *assumpsit,* went to rebut the equity of the plaintiff, have been shewn, by the defendant.  *Beach* v. *Glover & al.* superior court, *Fairfield* county, *August* term, 1806.   The practice has been sanctioned incidentally, by this Court.  *Sanford* v. *Sanford,* 5 *Day* 354. *Hillhouse & al.* v. *Smith* & al. 5 *Day* 432.  *Beers* v. *Broome,* 4 *Conn. Rep.* 247.   No case can be found, where a defendant, on

the hearing of the bill at large, was ever denied the right of proving facts connected with the subject of the bill, which went to rebut the plaintiff's equity. This is conformable to the simplicity of our legal proceedings, which, like our mode of conveyance, is attended with manifest advantage. (a)

6. That the plaintiff has foregone his opportunity to except to the finding. Had the plaintiff objected, in the court below, to the admission of the testimony, on the ground that the facts claimed to be proved were not brought on the record, by plea or answer, the court would have permitted a plea or answer to be filed; and this would have obviated the objection. Or, had the court below conceived, that according to the established practice, these facts might be proved on the hearing of the bill at large, the plaintiff, by a bill of exceptions to the admission of the testimony, might have brought the question regularly before this Court, without any surprise on the defendant.

The counsel for the defendant in error, contended, 1. That the bill was brought in the proper county. Local actions are those in which the title to land may be determined; but on a bill of foreclosure, the title is not in controversy. The only effect of the decree, is, to extinguish an equity of redemption. It has no operation on the title. 2 *Swift's Dig.* 197.

2. That the necessary and proper parties were before the court. *Beers* had previously proceeded against all the persons in interest, with the single exception of *Broome,* and had obtained against them a decree concluding their rights. But even if the proper parties were not all brought in, it is now too late for *Broome* to object. *Townsend* v. *Auger,* 3 *Conn. Rep.* 354.

3. That the decree was not erroneous, by reason of too large a sum having been found due. First, a larger amount was not found, by the court, than *Beers,* by the allegations in his bill, shewed, that he was entitled to. Secondly, *Beers* is not pre-

(a) In the early stage of the colonial government of *Connecticut,* the General Assembly took the exclusive cognizance of all matters in chancery. As they had the power of dispensing with the rules of pleading, and did not follow the forms of the *English* courts, petitions were heard by them, without plea or answer. When they apportioned to other courts, the cognizance of chancery causes, this practice was continued, by the different courts. It is undoubtedly owing to this, that the proceedings of our courts of chancery, and of our common law courts, are disentangled from the technical rules and tedious forms which characterize the proceedings of the *English* courts, and which have been adopted from them, by the courts of other states.

cluded, by any antecedent decree of the court, from shewing the amount actually due. *Broome,* not being a party to those decrees, cannot be bound by them ; and it is a settled principle of law, that if one party is not bound by a former judgment or decree, the other cannot be. Thirdly, if too large a sum was found, the decree will be reversed as to the excess only.

4. That *Beers* was not precluded, by the representation made by him to *Broome's* agent, from claiming a priority of title. To produce such an effect, several indispensable requisites are wanting.

In the first place, it does not appear, that *Beers knew,* that the enquirer *was Broome's agent.* In relation to this point, the record discloses only the simple fact, that he was *Broome's* agent. Consistently with the finding, he might have been, in *Beers's* view, an impertinent meddler in matters that did not concern him.

Secondly, it does not appear, that the *object* for which the agent sought the information, *was made known to Beers.* He was not apprised of any intention, on the part of *Broome,* to purchase the land, or to take a mortgage of it. He was, indeed, informed of *Broome's* judgment against *Wright ;* but of nothing more. He did not even know of *Wright's* insolvency. But before the representation of *Beers* could defeat or postpone his title, the enquirer must not only have had an interest in the enquiry, and that known to *Beers,* but he must have disclosed his object. He must have shewn, that his interest had some connexion with the question ; for a person interested may still make impertinent enquiries. The principal classes of cases, in which chancery has granted relief, on the ground of incorrect representation, are, 1st, where a marriage, and 2ndly, where a purchase of an estate, was contemplated; but in neither of these classes will chancery interfere, unless the party making the representation was apprised of the contemplated marriage or purchase. *Sug. Vend.* 3. *Ibbotson* v. *Rhodes,* 2 *Vern.* 554. *Peter* v. *Russell,* 2 *Vern.* 726. *Pow. Mort.* 472. Analogous to these cases are actions at law for false recommendations, in which the defendant's *ignorance of the object of inquiry* is considered a material ground of exculpation. *Tapp* & al. v. *Lee,* 3 *Bos. & Pull.* 367. 372. In some of the cases, in which the right of the party making the representation, has been defeated or postponed, by reason of such representation, the intention of the enquirer to purchase or lay out money, has been *distinctly made*

Broome
*v.*
Beers.

*known.* This was especially the fact in *Hobbs* v. *Norton*, 1 *Vern.* 136. In *Hunsden* v. *Cheney*, 2 *Vern.* 150. and the cases of Dr. *Amyas* and of *Clare* v. The Earl of *Bedford*, therein cited; in *Teasdale* v. *Teasdale, Sel. Cas. Ch.* 59. S. C. 2 *Eq. Ca. Abr.* 391.; in *Storrs* & al. v. *Barker*, 6 *Johns. Chan. Rep.* 166.; and in all that class of cases, the party, who was precluded from asserting his right, was necessarily conusant of what was doing, or in contemplation, by the other party.

Thirdly, before the right of a party will be defeated or postponed, in a court of chancery, he must be chargeable with *fraud* or *gross neglect;* and this must be shewn; for it will not be presumed. This position is not only founded in equity, but is supported by all the cases. In the present case, the record shews no fraud or neglect; nor does it disclose any facts from which fraud or neglect can be inferred. Consistently with every fact found, the representation made by *Beers* might have been an innocent mistake. On the contrary, the writing given by *Minor*, reasonably might, and, it may be fairly presumed, did, produce in *Beers's* mind an honest belief that the deeds were delivered simultaneously.

Fourthly, no man will be deprived of his right, by reason of any representation made by him, unless the party to whom, or of whom, such representation was made, has, in consequence thereof, sustained some *loss* or *damage.* This is true, both at law and in chancery. *Pasley* v. *Freeman*, 3 *Term Rep.* 51. 56. *Otis* v. *Raymond*, 3 *Conn. Rep.* 413. 1 *Fonb. Eq.* 162. But in the present case, *Broome* has sustained no loss or damage whatever. He has laid out no money; he has made no purchase; he has contracted no debt; he has forgone no advantage. He has merely taken an unavailable security, without being placed in any worse condition than he would have been in, had he not taken it. He could still levy his execution, or pursue any other remedy he had before the mortgage. If it be said, that he might have been *put to sleep*, by taking this mortgage, and thus might have lost his opportunity to get other security, there is a twofold answer In the first place, if *Broome* sustained any loss or damage, in this way, it ought to be shewn: it cannot be presumed from the facts found. But, in the next place, if such presumption were admitted, like all other presumptions it would be liable to be rebutted; and it would be effectually rebutted, by the fact, that *Wright*, at this time, was a bankrupt; and, of course, there was no other security to be had.

5. That the facts found by the court respecting the writing given by *Minor*, and *Beers's* declarations to *Broome's* agent, could not be noticed. It is an established principle of chancery pleading and practice, that nothing can be given in evidence, or found by the court, which does not relate to some allegation in the bill or answer, put in issue between the parties. But the bill stated nothing respecting the facts referred to. The finding of the court, therefore, respecting them, must be disregarded. 2 *Swift's Dig.* 252. 248. *James* v. *McKernon*, 6 *Johns. Rep.* 543. *Baldwin* v. *Norton* & al. 2 *Conn. Rep.* 161. *Gaylord* & al. v. *Couch*, 5 *Day* 223.

*Fairfield,*
*June,*
*1826.*

*Broome*
*v.*
*Beers.*

HOSMER, Ch. J. I will first put out of the case several objections, that require no discussion.

The title to the land was not in question under the plaintiff's bill of foreclosure. On a bill of this description, the mortgagee's title cannot be investigated; but he will be left to pursue legal means to establish it. 2 *Pow.* on *Mort.* 1044. *Anon.* 2 *Ch. Ca.* 244. The point has often been adjudged in this state; and the jurisdiction of the court is unquestionable.

The only parties in interest are before the court. By a former decree of foreclosure, the equity of redemption of *Minor* and *Wright*, and the other mortgagees, was taken away; and the decree of the superior court, can affect the right of the defendant alone.

Whether a larger sum has been found than was claimed, or, on any principle, could be claimed, it is unnecessary to determine. The reversal of the decree, to which result the court has come, leaves this point open for future consideration.

The material enquiries, in this case, are the following; 1st, whether the facts specifically stated by the judge, on the face of the record, were competent evidence before the court; and 2ndly, whether, if they are so regarded, the decree is erroneous.

1. The objection to the competency of the evidence rests on this supposition, that as there was a general hearing of the bill, without plea or answer, a precise issue was formed on the truth of the plaintiff's allegations; and that no defence, other than a disproval of the facts averred in the bill, is legally admissible.

By the established practice of this state, coeval with the exercise of chancery jurisdiction, by the judicial courts, on a plea

denying the truth of the plaintiff's allegations in his bill, or without plea, the defendant has been permitted to prove any matter of defence.    This practice is not more loose than the one at common law, under the plea of *non assumpsit*, by which, most matters in discharge of the action, are allowed to be given in evidence.    Such are payment, accord and satisfaction, foreign attachment, arbitrament, former recovery for the same cause, a higher security given, and a release; and that these facts are competent proof under the general issue, is unquestionable. 1 *Chitt. Plead.* 472.    The general assembly, at first, took exclusive cognizance of all questions in equity ; and it is universally known, that the proceedings before them were without plea or answer, or much form of any kind.    When they delegated this branch of their jurisdiction to the judicial courts, the established mode of proceeding was pursued ; and it has continued to the present time.    Pleas and answers in chancery, so far as regards the merits of a claim, have, on some occasions, been put in, but have never been held necessary, unless on an application made to the defendant's conscience, for want of better proof; and in such cases, written answers have been required, and until the late statute on the subject, were conclusive.    Whether a better mode of practice ought not to be instituted, is an enquiry which need not be agitated.    Rules of practice, the supreme court of errors is empowered to establish ; (*Stat.* 137.) but such rules, when established, ought to be prospective in their operation, or they may produce a very inequitable effect.    On the ground of the uniform and established practice of our courts of chancery, the evidence offered by the defendant, and preserved on the record, ought to have been received.

2. Whether the facts found by the court, constitute a valid defence against the plaintiff's bill, is the only remaining question.    The solution of it must depend upon a just view of their import, and of the principles of equity, by which their effect is to be estimated.

It must be assumed, that the court placed on the record every fact, which, in this case, bore on the point of the defence.    The object of the special finding, like that of a special verdict, or bill of exceptions, was, to put it in the power of this court, to review the decree in the court below ; and this alone could be effected, by an exhibition of all the material facts, and means of judging, which were displayed before the latter court.

On the same day, mortgage deeds were given by *Hawley* to *Minor* and to *Wright*; and from the face of them there is no possibility of determining, whether one was delivered before the other, or whether their execution was contemporaneous. The defendant attached the mortgaged premises, as being the property of *Wright*, and for more than 1000 dollars obtained judgment against him. Hence, it became an important enquiry, whether *Wright* had any unincumbered estate in the premises; or whether, by priority of deed, *Minor* had acquired a lien upon the land, which must be extinguished, before the defendant, by the levy of his execution upon it, or by mortgage, could make it available to the payment or security of his debt. To obtain information on this subject, the defendant sent a special *agent* to the plaintiff, who had become invested with *Minor's* title, and who had knowledge of the defendant's judgment, in order to make enquiry. From this it is certain, that when the conversation took place, between the plaintiff and the defendant's agent, the former knew it was not casual, or without interest in the result. It is a fair and reasonable presumption, that the plaintiff entertained no doubt, that the enquiry made by a creditor of *Wright's*, related to the means of securing his debt; and that it was serious and not accidental, he could not avoid believing, from its having been made by the defendant's *agent*. Men sometimes make enquiries thoughtlessly, or from curiosity only; but no person is at the trouble and expense of an investigation, by an attorney, on a subject in which he has no interest. The plaintiff, undoubtedly, knew, that the question proposed by the defendant's agent, was one of serious import to him; and he could have experienced no difficulty in referring it to the real motive. He might have folded his arms, and maintained an obstinate silence, if he had pleased; but in justice and common honesty, he was under an obligation to speak the truth, if he said any thing, by giving a fair representation of what he knew. To the enquiry made concerning the priority of *Minor's* deed, the plaintiff replied obsolutely and explicitly, "that the above deed was entitled to no priority before the deed of *Wright*; that said deeds were delivered at the same time; and that said *Minor* had given a writing to that effect." Induced by these strong asseverations, the defendant took a mortgage of the premises from *Wright*. No question was made concerning the above writing; nor does it appear, that the defendant ever saw it, previous to the reception of his deed. It has occupied too much consider-

*Fairfield,*
*June,*
*1826.*

Broome
*v.*
Beers.

*Fairfield,*
June,
1826.

Broome
*v.*
Beers.

ation in this case.   It was referred to, by the plaintiff, in confirmation of his assertions ;  but the main ground of the defendant's confidence must have been,  the unequivocal declaration, that the deeds were delivered at the same time.   This affirmation transcended the writing ; and likewise involved the truth of a fact *dehors* the deeds, which was ascertainable by oral testimony alone ;  and that was, the time of their delivery.   The whole of the plaintiff's representation to the defendant's agent is found to be untrue.   The deeds were not delivered contemporaneously ;  and the writing referred to as confirmatory evidence, was false and deceptive.

That the conduct of the plaintiff in endeavouring to appropriate to himself the property in question, after having induced the defendant to take a mortgage of the premises from *Wright,* is, in a moral point of view, incompatible with good conscience, it is impossible to question.   In view of morality, every representation or action, deviating in the least from the most exact and scrupulous sincerity and truth, is contrary to good faith.

The insolvency of *Minor* furnishes no evidence, that the debt of the defendant would not, in some way, have been paid or secured.  *Buck* v  *Cotton, 2 Conn. Rep.* 128.   And it is neither justification nor apology, that the plaintiff did not know the precise manner in which his misrepresentation would operate. Sufficient it is, that the enquiry made was material ;  and that the plaintiff had the means of knowing, that it might, and probably would, have an effect, on the mode of dealing with the judgment, recovered by the defendant against *Wright.*   It is too much to demand,  that the precise purpose of a material enquiry shall be developed, perhaps to the entire frustration of it, or that equity will refuse to administer relief against the injurious consequences of palpable misrepresentation.   The defendant, for aught the court can perceive,  by reposing on the title of *Wright,* and intermitting further efforts to secure his debt, has lost it irreparably, if the supposed pledge is taken out of his hands.

It is the common exercise of chancery jurisdiction to give relief in cases of fraud ;  and that is sometimes called a fraud in equity, which is not such strictly, but figuratively, there being no moral turpitude in the transaction ;  because it is followed with consequences as pernicious,  and  equally deceives and damnifies the party, as if it were actually fraudulent.   Imposition, oppression, undue advantage and neglect, are often

comprehended under the general term, frauds, and are susceptible of relief, as such, in a court of equity, when essentially they have that character. And on this subject, redress in which is a favourite object in equity, it was said, by that eminent chancellor, Lord *Hardwicke*, that chancery will relieve against presumptive fraud; so that equity carries the rule further than the rule of law; for there fraud must be proved, and not presumed only. Earl of *Chesterfield* & al. v. *Janssen*, 1 *Atk.* 352.

Even at law, there have been cases of relief, where there has been a material mistake, and no obliquity of intention. Such are unintentional misrepresentations, made by the assured to an underwriter, which are false in a material point. *Macdowall* v. *Fraser, Doug.* 260. And what is worthy of notice, they are classed under the head of fraud. *Park* on *Ins.* 204. 1 *Marsh.* on *Ins* 338. A misrepresentation in a material point equally vitiates the contract of insurance, whether it proceed from fraud, mistake, or negligence. I refer to these principles, not as having a decisive bearing on the subject of present controversy, but as shewing the general spirit of law on such questions, and its inclination, where one of two innocent persons must suffer, by fraud or negligence, to cast the loss on him who gave occasion to it.

That there may be a fraud in the view of a court of equity, which is not so at law, has long since been declared. *Trenchard* & al. v. *Wanley*, 2 *P. Wms.* 166. And of this legal truth, the determinations in chancery give the most abundant confirmation.

The grossest cases of fraud are those where there is *allegatio falsi* wilfully, or *suppressio veri* with interested views; and this vice in the efficient motives of a transaction, will generally hold to make it void, or lay the foundation of redress, in favour of the party imposed on, or misled by his ignorance of the thing concealed. *Carter* v. *Boehm*, 3 *Burr.* 1910. *Jervois* v. *Duke*, 1 *Vern.* 19. *Broderick* v. *Broderick*, 1 *P. Wms.* 239. Hence, if any instrument is obtained from persons ignorant of their rights, but whose rights are known to the party obtaining the instrument, equity will relieve. *Broderick* v. *Broderick*, 1 *P. Wms.* 239. *Jervois* v. *Duke*, 1 *Vern.* 19. *Cann* v. *Cann*, 1 *P. Wms.* 727.

In the spirit of the preceding determinations, it frequently has been decided, that where a person stands by, and by silence only, has contributed to an injury, he shall be compelled to

remedy the mischief his fraudulent silence has occasioned. *Hunsden* v *Cheney*, 2 *Vern.* 150. *Draper* & al. v. *Borlace* & al. 2 *Vern.* 370. *Ibb.tson* v. *Rhodes*, 2 *Vern.* 554. *Pilling* v. *Armitage*, 12 *Ves.* jun 85. *Dann* v. *Spurrier*, 7 *Ves.* jun. 231. *Bill* v. *Kinaston*, 2 *Atk.* 82. *Trenchard* & al. v. *Wanley*, 2 *P. Wms.* 167. This is approaching a step further than in the former cases cited, in the maintenance of moral principle, and the redress of damage resulting from the non-performance of a moral duty.

In *Evans* v. *Llewellyn*, 2 *Bro. Ch. Rep.* 150., a conveyance was set aside, where there was no fraud or imposition, but as having been *improvidently* entered into. If, upon a treaty for a contract, a person makes a false representation, whether knowingly or not, by means of which he puts the party bargaining under a mistake upon the terms of the bargain, it is a fraud, and relievable in equity. 1 *Bro. Ch. Rep.* 546. *Evans* v. *Bicknell*, 6 *Ves* jun. 174. 183. *Burrowes* v. *Lock*, 10 *Ves.* jun. 475. *De Manneville* v. *Crompton*, 1 *Ves. & Bea.* 355, 6. Here an advantage has innocently been obtained, to retain which would be against good conscience ; but when, by a like misrepresentation, a person has been subjected to irreparable damage, if the claim of the person who misrepresented is allowed in equity, why should there not be a refusal of such allowance, and that equitable redress, of which the nature of the case admits ?

I now come to the consideration of the merits of the case before us ; and on the general principles already stated, I experience no difficulty as to the equitable result.

It will be universally admitted, if the plaintiff had knowledge of his own title, at the time of his conversation with the defendant's agent, that he committed an actual fraud. He must have known, on this supposition, that the deed of *Minor* was first delivered, and that it had unquestionable priority. There is nothing in the case to repel the inference of the plaintiff's knowledge, if, on the principles of equity, it ought to be presumed ; and that it ought, I think, cannot admit of a reasonable question. It was said, by the learned and able Chancellor *Kent*, in *Storrs* v. *Barker*, 6 *Johns. Ch. Rep.* 169. : " The presumption is, that every person is acquainted with his own rights, provided he has had reasonable opportunity to know them ; and nothing can be more liable to abuse, than to permit a person to reclaim his property, in opposition to all the equitable circumstances which have been stated, upon the mere pretence,

*Fairfield,*
June,
1826.

Broome
*v.*
Beers.

that he was, at the time, ignorant of his title. Such an assertion is easily made, and difficult to contradict." This presumption, resting on the interest of the plaintiff, and easy means of information from *Minor,* of whom he purchased, is supported by stronger foundations than many others which have been admitted in equity. *Newland* on *Cont.* 504. & seq. *Sugd. Vend.* 492. & seq.

If, however, the plaintiff was unacquainted with his title, how can he avoid the imputation of *gross neglect*? With equal propriety may it be said of him, as was said, by the Lord Keeper, of the defendant, in *Hobbs* v. *Norton,* 1 *Vern.* 137. "It was a negligent thing in him not to inform himself of his own title, that thereby he might have informed the purchaser of it, when he came to enquire of him." Between the equitable effects, resulting from wilful misrepresentation, and misrepresentation through gross neglect, there is no difference.

The case of *Hobbs* v. *Norton,* before cited, decided in the year 1682, and never overruled to the present time, is an authority in point, and upon facts less favourable for relief in equity, than those which constitute the present case. The younger brother of Sir *George Norton,* having an annuity of 100 pounds charged on land by his father's will, contracted with Mr. *Hobbs* for selling to him his annuity. He applied to Sir *George Norton,* and gave him information, that he was about to buy the annuity of his younger brother, and enquired whether he had a good title. Sir *George Norton* replied, that he believed his brother had a good title to it, and that he had paid him the annuity for twenty years ; but likewise told him, that he had heard there was a settlement made of his father's lands before the will, and that it was in the hands of Sir *Timothy Baldwin* ; that he had never seen it, and therefore could not tell him what the contents of it were ; but he *encouraged* him to proceed in his purchase. Afterwards, Sir *George Norton* got the settlement into his hands, and would avoid the annuity. The bill of *Hobbs* was to have the annuity decreed, or repayment of the purchase money. The Lord Keeper decreed the payment of the annuity, purely on the encouragement Sir *George* gave *Hobbs* to proceed in his purchase, and his neglect to make enquiry concerning his own title. The differences between this case and the one under consideration are altogether in favour of the latter. In *Hobbs* v. *Norton,* the declaration

was of *belief* only ; here it was absolute, that the deeds were contemporaneously delivered. In the former, the settlement was referred to ; the claim, by virtue of it, ignorance of its contents ; and the person was named, who had it in possession ; and if it had been inspected by *Hobbs,* he never would have purchased. In the case before us, the writing was mentioned, and no doubt or ignorance expressed concerning its contents, but they were declared to be confirmatory of the plaintiff's assertions ; no person was denoted, who had it in possession ; and if it had been seen, it would, so far as it went, have established the plaintiff's affirmations ; the presumption, that the plaintiff had knowledge of his own title, was not repelled, as it was in *Hobbs* v. *Norton* ; and the neglect of obtaining knowledge, if it existed, was equally great.

Upon the strength of this, and other determinations, the case of *Storrs* v. *Barker,* before cited, was decided by Chancellor *Kent,* in which the equitable title of the plaintiff was admitted, and the defendant enjoined from pursuing his action of ejectment.

In this case, undoubtedly, there are some ingredients for the exercise of equity jurisdiction, that are not to be found in the one under discussion ; but from the principle stated and enforced, that every person is presumed to be acquainted with his own rights, if he has had a reasonable opportunity to know them ; and that it is deemed an act of fraud for a party, conusant of his own title, to suffer another party ignorant of his right, to go on, under that ignorance, and purchase the property ; it is indisputably clear, that on this ground the case was in favour of the plaintiff. *Storrs* v. *Barker,* 6 *Johns. Ch. Rep.* 168. 169. And likewise from the citation of *Hobbs* v. *Norton,* with approbation, and other cases, to some of which I have already recurred, there can be no doubt, that the learned chancellor would have come to the same result as he did, had the turning point been exclusively, the observations made by the defendant concerning his title.

On the whole, I cannot entertain a particle of doubt, that against the presumed knowledge in the plaintiff of his right ; against his gross neglect, if he really was ignorant of it ; against his encouragement of the defendant to consider the title of the property in question, as being vested in *Wright,* equally with himself ; it would be contrary to the first principles of equity,

often recognized and applied, to give success to the plaintiff's bill of foreclosure.

LANMAN, J. was of the same opinion.

PETERS, J. The plaintiff in error has taken several exceptions to the decree in question.

1. The first is, that the suit was not brought in the proper county. The title of land is not in question; and such suits have always been considered transitory. 2 *Swift's Dig.* 197. *Pow. Mort.* 1043. Anon. 2 *Chan. Ca.* 244. *Owen* v. *Granger,* cited *arguendo* 2 *Day* 477. *Owen* v. *Mather,* Superior Court, *Hartford* county, 1816. *Stat.* 34. *tit.* 6. *c.* 1. *s.* 6. (ed. 1808.)

2. Another is, that *Minor* and *Wright* were not made parties. Their equity of redemption was extinguished by the decree of 1819.

3. Another is, that too large a sum was found due to the plaintiff. This does not appear of record; and for aught we know, the notes were executed in *New-York,* or some other country, where a higher rate of interest is allowed than here; as the decree might have been founded on such evidence; which would have been admissible. It ought now to be presumed, that such facts were proved, at the trial, as would warrant the finding, unless the contrary is apparent. *Pettibone* v. *Pettibone,* 5 *Day* 324.

4. But the exception principally relied on, is, that the facts found by the court, precluded the plaintiff from claiming the priority for *Minor's* deed.

The plaintiff in his bill avers, that on the 12th of *February,* 1812, *Hawley* mortgaged the land in question to *Minor,* and *afterwards,* on *the same day,* mortgaged the same land to *Wright;* and the court found all the facts stated in the bill, true. This made an end of the case, and entitled the plaintiff to a final decree. I lay out of the case the subsequent finding of the court; because, first, the facts found are not within the issue; secondly, they neither prove nor disprove, the facts alleged; and thirdly, the facts so found are insufficient to bar the plaintiff's claim to priority from the facts previously found.

It is a well settled rule in chancery, as well as at law, that whatever is intended to be proved, must be put in issue; otherwise it cannot be given in evidence; for the court pronounce the decree *secundum allegata et probata;* and the reason is,

that the adverse party may be apprized against what he has to defend. *Coop. Eq. Pl.* 7. "The same rule," says the late Chief Justice, "has been adopted as at law, respecting the evidence admissible under the general issue ; that is, that proof of no facts should be admitted but such as conduce to prove, or disprove, the facts stated in the bill ; and that all special matters, which do not deny the truth of the bill, but admit and avoid it, should be expressly stated in the answer, so as to give the plaintiff notice of the nature of the defence. It has accordingly been decided, that proof cannot be admitted with regard to facts not alleged in the bill or pleadings " 2 *Swift's Dig.* 248. This rule has been adopted, by the court for the correction of errors, in *New-York,* and by this Court. In *James* v. *McKernon,* 6 *Johns. Rep.* 543. 559 *Spencer,* J. thus expresses the unanimous opinion of the court: "It is an invariable and universal rule of the court of chancery to found its decrees on some matter put in issue between the parties, by the bill and answer." In *Gaylord* & al. v. *Couch,* 5 *Day* 223. 230. it was said, by *Smith,* J., in delivering the opinion of this Court, that "the facts stated in the petition, and the rights and duties resulting from these facts, are, and must be, the only basis of the decree ; and any finding of the committee relating to notes of hand not stated in the petition, must stand for nothing." The same rule was recognized in *Baldwin* v. *Norton,* 2 *Conn. Rep.* 161.

The fact found is insufficient to postpone the plaintiff; for the written declaration of *Minor* stands for nothing. Though admissible under a proper issue, it was properly explained away, by other testimony. *Beers* v. *Hawley,* 2 *Conn. Rep.* 467.

The only fact remaining is the declaration of the plaintiff, that the deeds to *Minor* and *Wright* were simultaneous, and that the deed to *Minor* was entitled to no priority. Had the defendant made known the object of his enquiry, he would have been entitled to a candid answer. But, for aught the plaintiff knew, the enquiry was impertinent. And it is a rule in equity, that "if a subsequent mortgagee apply to a prior incumbrancer, to know if he has any incumbrance on the estate, upon which he intends to take a security, and he denies it, he will thereby lose his priority. But, in this case, it will be necessary for such subsequent mortgagee, or his agent, to inform the prior incumbrancer, that he is about to lend the mortgagor money, or otherwise he will not, on denial, lose his priority ; for he is not bound to answer, unless he knows of such intentions, as the

question may be put merely to satisfy an impertinent curiosity." *2 Swift's Syst.* 433. *2 Swift's Dig.* 185. *Pow. Mort.* 471, 2. *Ibbotson* v. *Rhodes,* 2 *Vern.* 554. *Peter* v. *Russell,* 2 *Vern.* 726.

But admitting that *Beers* was bound to answer truly, and that his declaration was properly received in evidence, *Broome* has no reason to complain; for he has sustained no injury. He had a lien, by attachment, on all the property of *Wright*; and he secured, by mortgage, a more beneficial interest, at less expense, than he could have obtained, by the levy of an execution. His loss is, therefore, *damnum absque injuria*; which is not a ground of relief in law or equity; for the gist of his complaint is the injury done to him. 1 *Fonb. Eq.* 162. *Pasley* v. *Freeman,* 3 *Term Rep.* 51.

I am, therefore, of opinion, that there is no error in the decree complained of.

BRAINARD, J. was absent, and DAGGETT, J. gave no opinion, having been of counsel in the cause.

Decree reversed.