Ralston *v.* Hughes.

| 13 | 469 |
| 129 | 215 |

WILLIAM H. RALSTON, Plaintiff in Error, *v.* JOHN HUGHES, Defendant in Error.

ERROR TO ADAMS.

The Circuit Court of any county, by virtue of its general chancery jurisdiction, can enter a decree affecting real estate situated in any part of the State; provided part of the land to be affected lies in the county where the suit is instituted, and that the greater part of such land does not lie in any other county. (CATON, J., holds the decree valid over the land within the county of jurisdiction.)

That provision of the statute, which declares that suits in equity shall be commenced, if they affect real estate, in the county where the estate or a greater part thereof shall be situated, being a restriction upon the general powers conferred on the circuit courts, can have no application to cases not embraced within it.

The owner of an equity of redemption, until the mortgagee takes possession of the land, for condition broken, is to be considered the owner of the land, and liable for the payment of taxes thereon; and he cannot acquire a title by becoming a purchaser

of the land at a sale for those taxes; such a purchase is considered as but another mode of paying those taxes.

THIS was an action of ejectment, in which the plaintiff in this court was the plaintiff below, brought to recover the possession of the north-west quarter of section 35, in township 1, south of the base line in township 7, west of the 4th principal meridian. The parties dispensed with a jury, and a trial was had before the court. The judgment was for the defendant.

It appears, from the bill of exceptions, which contains all of the evidence in the case, that upon the trial in the court below, the plaintiff, for the purpose of proving that the defendant claimed title from the same person he did, gave in evidence a general warranty-deed, containing covenants of seizin and against incumbrance for the land in question from one Hans Patten to one Robert Tillson, bearing date April 21, A. D. 1836, and a like deed for the same land from said Tillson to said defendant, John Hughes, bearing date March 15th, 1841.

The defendant then admitted to the court, as evidence for the plaintiff, that he went into the possession of the premises in question under and in pursuance of the aforesaid deed from the said Tillson to him at the time of the date thereof, and that he had ever since, up to the time of the trial, continued in the possession of the same, under and in pursuance of said deed.

The plaintiff then gave in evidence the record of a suit in chancery in the said county of Adams, disposed of at the September term thereof, A. D. 1844, wherein one Samuel A. Morse was complainant, and the aforesaid Hans Patten, Robert Tillson, and said defendant, John Hughes, together with William Patten, Anthony Cannon, Madison Hendricks, E. Haskins, Abraham Cooley, Peter Cox, Clement Pierce, John Miller, and the unknown heirs of David Kehr, deceased, were defendants.

The object of said chancery suit was to foreclose a mortgage executed by said Hans Patten to said Samuel A. Morse, and procure a sale of the premises therein mentioned, among which was the land in question. The bill, as said record shows, was filed on the 13th of February, 1844, and alleges, among other things, that on the 21st of April, 1836, said Hans Patten executed and

delivered to said complainant, Samuel A. Morse, a mortgage upon thirteen quarter sections of land, to secure the payment of · $1,600 by said Patten to said Morse; that twelve of said quarter sections were in Illinois, and one in Missouri; that those in Illinois were situate as follows: three in Warren county, three in Calhoun county, and one in each of the counties of Mercer, Stark, Knox, Hancock, Pike, and Adams. The bill then alleges sundry conveyances of the respective quarters therein mentioned, and among others the aforesaid conveyance of the said quarter situate in Adams, (and which is the one for which this suit was brought,) from said Hans Patten to said Robert Tillson, and said conveyance from said Tillson to said defendant, Hughes; that said last-mentioned two conveyances were made subsequent to said mortgage; and that said Tillson and Hughes, each, at the time of the respective conveyances to them, had notice of the same. The bill further alleges that said Hans Patten, Robert Tillson, John Hughes, and William Patten, were residents of said Adams county. The bill did not allege how many acres of land either of said quarter sections contained, nor that the greater part of the land mentioned in it was situate in said Adams county, nor that the greater part of the same was situate in any of said counties. Nor did it allege where any of the defendants, except the four last above named, resided.

The said record further shows, that at the same time the said bill was filed, the complainant filed an affidavit, showing that Anthony Cannon, Madison Hendricks, E. Haskins, Abraham Cooley, Peter Cox, Clement Pierce, John Miller, and the unknown heirs of said David Kehr, deceased, upon close inquiry, could not be found in said State; that on the same day a summons, in the usual form, was issued in said cause by the clerk of said court, against all of the defendants, directed to the sheriff of said Adams county; that said summons was returned by said sheriff, March 18th, 1844, served upon said Tillson, the two Pattons, and said Hughes, March 6th, 1844, and not found as to the rest of said defendants; that a notice of the pendency of said suit, in the usual form, was published, according to law, prior to the commencement of the April term of said court, A. D. 1844; that at the April term of said court, 1844, none of the defendants

appearing, the bill was taken for confessed by them; and that at the same term said court rendered a decree of foreclosure and sale, as to the lands in Illinois, in the usual form, and directed that the master in chancery of said county make said sale, and convey the premises sold to the purchaser. The said record further shows, that on the 29th of July, 1844, said master filed a report of sale, stating, among other things, that he had sold all of the lands in said decree mentioned, and all of the right, title, and interest of the defendants therein, to said plaintiff, William H. Ralston, for $930; that said sale was made on the 25th of July, 1844, and that he had by deed, as such master, conveyed all of said lands, &c., to said Ralston. (Accompanying said report, and as a part of it, was a copy of said deed.) Said record further shows, that at the October term of said court, 1844, said report was approved and confirmed, and that the court thereupon made a decree of investiture, in the usual form. The plaintiff then gave in evidence a deed, made under and in pursuance of said decree and sale, from the master in chancery of said Adams county to him, for, among others, the land in question, and the interest and title of the defendants in said chancery suit therein, bearing date July 29th, 1844. The foregoing was all the evidence on the part of the plaintiff.

The defendant then offered in evidence a record of a judgment of said court, rendered at the April term thereof, A. D. 1841, from the records of said court; also the process for the sale of lands delinquent for the taxes of 1840, in said county of Adams, and the return thereon; and also a deed from the sheriff of said county to the aforesaid Robert Tillson, for the premises in question; to the admission of each and every of which the bill of exceptions shows that the plaintiff objected, but that the court overruled the objection and admitted them in evidence, to which the defendant excepted. And this was all the evidence on the part of the defendant.

Upon the foregoing evidence, the court found the issue for the defendant. Whereupon the plaintiff entered his motion to set aside said finding, and for a new trial.

The cause was heard before O. C. SKINNER, J., at November term, 1851.

The following are the errors assigned :

1. That the court erred in admitting in evidence the said record of said tax judgment, and said process, return, and tax deed, offered in evidence by the defendant.

2. That said court erred in finding the issue aforesaid in favor of the defendant.

3. That said court erred in overruling the said motion of said plaintiff to set aside the finding of the court, and for a new trial.

4. That said court erred in rendering the judgment aforesaid in favor of said defendant.

A. WHEAT, for plaintiff in error.

WILLIAMS & LAWRENCE and BROWNING & BUSHNELL, for defendant in error.

TRUMBULL, J.   Two questions arise upon this record : 1. Had the Circuit Court of Adams county jurisdiction to enter the decree of foreclosure offered in evidence ?

2. Could the defendant avail himself of the tax title ?

The statute confers upon the judges of the circuit courts, in their respective circuits, " jurisdiction over all matters and suits at common law and in chancery, arising in each of the counties in their respective circuits, where the debt or demand shall exceed twenty dollars," and authorizes said courts, in term time, and the judges thereof in vacation, " to award throughout the State, and returnable in the proper county, writs of injunction, *ne exeat, habeas corpus,* and all other writs and process that may be necessary to the due execution of the powers with which they are or may be vested.  Rev. St. chap. 29, §§ 29, 30.  See also the case of Kenney v. Greer, decided at the present term, (*ante,* 432.)

The record offered in evidence was a transcript of the proceedings in a suit to foreclose a mortgage upon twelve quarter sections of land, situated in eight different counties of this State, one of the quarter sections being in the county of Adams, where the suit was brought, three in the county of Calhoun, three in the county of Warren, and one in each of five other

40 *

counties. All of the defendants, except those to whom notice was given by publication as non-residents of the State, were served with process in Adams county, and the action was rightly commenced in that county, if a suit to foreclose a mortgage can be regarded as a personal action, as some courts have held. Broome *v.* Beers, 6 Conn. 198; Palmer *v.* Mead, 7 Ib. 156; Buckenridge *v.* Ormsby, 1 J. J. Marsh. 256; Owings *v.* Beall, 3 Littell, 107.

But, treating a bill to foreclose a mortgage as a suit affecting real estate and local in its character, and we are still of the opinion that the Circuit Court of Adams county had jurisdiction of the case. It undoubtedly had jurisdiction over the land situated in Adams county; and having jurisdiction over part of the subject-matter of the suit, with authority under the statute to send its process into any county in the State necessary to a due execution of its powers, it drew to it jurisdiction over the other lands situated in other counties, upon the principle that when part of a case is within the jurisdiction of a court of equity, it will take cognizance of the whole case, for the purpose of doing complete justice by embracing the whole subject, deciding upon and settling the rights of all persons interested in the subject-matter of the suit, and preventing future litigation. The same objection interposed to the jurisdiction of the Adams Circuit Court, could have been made to that of the Circuit Court of any other county where the suit could have been brought, and the consequence is, if the objection be valid, that in foreclosing a mortgage upon different tracts of land situated in different counties and where the greater part does not lie in any one county, there would have to be as many separate suits as there were tracts of land lying in different counties. The very case now under consideration affords a fit illustration of the inconvenience, delay, and expense which must necessarily result from the prosecution of a separate suit in each county wherein any part of the mortgaged premises are situated. To have foreclosed this mortgage, unless the Circuit Court of some one county had jurisdiction of the whole matter, would have required eight separate suits in as many different counties; and it is not impossible that cases might arise affecting real estate in

different counties so circumstanced, that justice could not be done without bringing the whole matter before the court in one suit. It could never have been the intention of the legislature that the jurisdiction should be divided. We conclude, therefore, that the Circuit Court of any county, by virtue of its general chancery jurisdiction, has authority to entertain suits affecting real estate situated in any part of the State, provided part of the land to be affected lies in the county where the suit is instituted, and that the greater part does not lie in any other county.

The provision of the statute, (Rev. Stat. ch. 21, § 2,) which declares that a suit in equity shall be commenced if it "may affect real estate in the county where the same or the greater part thereof shall be situated," has no application to a case like the one under consideration, for the reason that the greater part of the lands to be affected by the decree do not lie in any one county. Such would be the case if the quantity of real estate which might be affected by the decree was the same in different counties. The consequence is, that there must be numerous cases of which no court can entertain jurisdiction under the provisions of the statute last referred to. It must, therefore, be regarded as applying only to cases within its purview; that is, to cases which may affect real estate, where the same or the greater part thereof is situated in some one county. Of such a case, the Circuit Court of any other county than the one where the greater part of the land was situated, would have no jurisdiction; but this provision of the statute being a restriction upon the general powers conferred on the Circuit Courts by other provisions of law, can have no application to cases not embraced within it.

The objections to the form of the decree have no foundation in the record. When carefully examined, it will be seen that the decree directs the money to be paid "to the master in chancery of said county." "Said county" here manifestly has reference to the county of Adams, where the court was then sitting, for up to this time the name of no county appears in the decree; afterwards comes a description of the lands and the names of the various counties in which they are situated; then follows

the direction that the sale be made by "the Master in Chancery of said county:" the very same words that had been used in referring to the master in the forepart of the decree, and clearly referring to the same master. But if this were not so, the defect, if any, would be cured by the subsequent decree of the court approving the sale made by the Master in Chancery of Adams county.

The remaining question relates to the tax-title set up by the defendant.

The record shows that the premises were purchased by Tillson for taxes which accrued while he was in the actual possession of the same, and the owner of the equity of redemption by purchase from Patten, the original mortgagor. Occupying that position, it was his duty to have paid the taxes; and it would be iniquitous to allow him, or his grantee, Hughes, to set up a tax-title acquired under such circumstances, to defeat the title of the mortgagee or those claiming under him. Choteau v. Jones, 11 Ill. 322; Frye v. Bank of Illinois, Id. 383; Voris v. Thomas, 12 Ill. 442.

The judgment of the Circuit Court is reversed, and the cause remanded.

*Judgment reversed.*

SEPARATE OPINION OF CATON, J. This was an action of ejectment, brought for the recovery of a quarter section of land in Adams county. Upon the trial the plaintiff introduced a deed from Patten to Tillson, dated April 21st, 1836, and another from Tillson to the defendant, dated March 15th, 1841. He then offered the record and decree in a suit in chancery from the records of the Adams Circuit Court, in which Morse was complainant, and Patton, Tillson, Hughes, and others were defendants. The bill in that suit was filed in February, 1841, and a decree of foreclosure entered in the April following. That bill sought the foreclosure of a mortgage, executed on the 31st of April, 1836, upon the premises in question, situated in Adams county, and upon twelve other quarter sections of land, one of which was situated in the State of Missouri, three in Warren county, three in Pike county, and the other five in five other different counties

of this State. The decree purports to foreclose the mortgage upon all the land situated in this State, and in pursuance thereof the premises were sold by the Master in Chancery of Adams county, and the plaintiff became the purchaser, and received a master's deed therefor, all of which was reported to the court by the master. That court, by its final decree, approved the report and sale, and declared all the title and interest of all the defendants, to be vested in the purchaser. This decree remains, unreversed or vacated. To the admissibility of this record, the defendant objected; but the court admitted it, subject to the objection. The admissibility of that record becomes the first subject of inquiry before us. It is now insisted, that the decree was utterly void, for the want of jurisdiction in the court which rendered it.

The Circuit Courts of this State are preëminently courts of general jurisdiction, and although that jurisdiction is not universal, it is much more so than any courts known to the English constitution. Our Circuit Courts have a general common-law and chancery jurisdiction, and among the most ordinary equity powers, is that of decreeing the foreclosure of mortgages. The character of this proceeding is within the ordinary chancery jurisdiction of the Circuit Court, and in such a case the record need not show the jurisdiction of the court, but that we are bound to infer, when the decree is questioned collaterally, as in this case, unless it affirmatively appears upon the face of the record itself that the particular subject upon which the court was adjudicating was not within its jurisdiction or control. The decree imports of itself absolute verity, unless it carries with it the evidence that the court acted without authority. Although our Circuit Courts possess general common-law and chancery jurisdiction, embracing of course the power to foreclose mortgages, yet it does not follow that they have the right to foreclose all mortgages; so that the right to act in a given case may depend upon the existence of facts. When the court has acted, we must presume, in a collateral proceeding, that those facts existed, unless the record affirmatively shows that they did not exist. In this case the record does not show affirmatively the facts, upon which the right of the Circuit Court of Adams county

depended, so that there is no room left for those inferences or legal presumptions which would otherwise arise, in favor of the authority of the court to adjudicate upon a subject which is within its ordinary jurisdiction. The facts shown by this record are, that but one of the quarter sections upon which the mortgage was foreclosed, was situated in Adams county, three in each of two other counties, and one in each of five other counties, all however, within the same circuit. From these facts we are to determine whether the court acted wholly without authority, and whether its decree was utterly void. This leads us to an examination of our statute, which it was supposed must determine the question.

The second section of our chancery act provides, that "the mode of commencing suits in equity shall be by filing a bill, setting forth the nature of the complaint, with the clerk of the Circuit Court of the county within whose jurisdiction the defendants or a major part of them, if inhabitants of this State, reside; or if the suit may affect real estate, in the county where the same, or greater part thereof, shall be situated." The object of this suit was within the meaning of this section to affect real estate. The mortgage embraced twelve quarter sections, and if the bill could only be filed in a county in which the greater part of the real estate sought to be affected was situate, then the Circuit Court of neither of the counties had jurisdiction, for until it is proved that three is the greater part of twelve, it cannot be admitted that the greater part of the land was in any one county, for in no one county were more than three of the twelve quarter sections situated. The Adams Circuit Court had as much right to claim jurisdiction as that of Pike or any of the other counties, for in neither was the greater part of the land situate. Therefore, the words, or the greater part thereof, have no application to this case, for it is not embraced within them; they do not describe it, and consequently can have no reference to it. But, even if we should construe these words to give jurisdiction to the Circuit Court of the county in which more of the land was situated than in any other one county, the same difficulty would still exist, in determining in which county the jurisdiction of the suit vested, for an equal quantity was situated in

each of the counties of Pike and Warren, and consequently neither would come within that description. It was, however, conceded upon the argument, that where equal quantities of the land lay in different counties, either may take jurisdiction; but if so, it must be derived from some other part of the law, for unless equal means greater, it is manifest that such a case is not embraced in these words. They may, therefore, be withdrawn from our consideration, as having no application to the case before us, and the statute is to be read as if they were not there. It then reads : " If the suit may affect real estate [the bill shall be filed] in the county where the same shall be situate." This authorizes the Circuit Court of each county, within which a portion of the land is situated, to foreclose the mortgage as to that land at least. It is precisely like the case supposed by one of the counsel for the appellee, where a mortgage is upon several tracts of equal size, situated in several counties. That would be a case where the Circuit Court of neither county would have jurisdiction by reason of the greater quantity of the land being within it; and in that case it was conceded that the mortgage might be foreclosed in either county, at least as to the land embraced within it.

As the validity of the title, acquired under that decree of foreclosure, to the lands not situated in the county of Adams is not involved in this suit, I prefer to confine my opinion strictly to the case presented by this record; and I have therefore not investigated the question, so as to express an unqualified opinion as to the jurisdiction of the court over lands situated in other counties. It seems to me that it will be time enough to express an opinion on that subject, when the title acquired under the decree to those lands shall be brought before us for judicial action. That involves a very important inquiry relative to the general chancery jurisdiction of our Circuit Courts, the extent of the consequences of which we may not readily foresee. While inclined to the opinion expressed by the other members of the court on that subject, I shall proceed to show that the title acquired to the lot in controversy, under the decree, would not be affected, even if the court exceeded its jurisdiction in foreclosing the mortgage upon the lands situated in other counties, than

that in which the court was held. I have already shown, to my own satisfaction at least, that by the express provisions of the statute, the Circuit Court of Adams county had authority to foreclose the mortgage as to the lot of land lying within that county; and assuming that the jurisdiction of the court did not extend to the lands situated in other counties, the question arises, did the exercise of a jurisdiction which it did not possess over those lands, render void that portion of the decree which affected the land over which it had jurisdiction? That portion of the decree which would affect land beyond the jurisdiction of the court was of course void; but that I think would not vitiate that part of the decree which was entered in pursuance of an authority which the court did possess. The valid and void parts of the decree were not so dependent upon each other, or blended together as would necessarily require that a reversal of a part should destroy the whole. As to the lot in Adams county, the decree would have been precisely the same, had the court declined to render any decree against the other land. In that case, the owner of the lot in question, seeking to redeem after the decree, and before the Master's sale, would have had to pay the full amount due upon the mortgage, for it was the right of the complainant to insist upon a sale of the premises, until he had received the full amount due him upon the mortgage. This very mortgage embraced one lot, situated in the State of Missouri. Suppose the jurisdiction of the court had been unquestioned over the lands in this State, and by mistake or design had ordered a sale of the lot in Missouri with the others, to that extent, undoubtedly, the decree would have been void; but there can be no reason why that should vitiate that portion of the decree which was rendered in pursuance of law and by lawful authority. The decree is not dependent and indivisible, but operates upon each lot separately. Even on appeal, this court would have only reversed that portion which was erroneous or void, and affirmed the balance. Suppose a court should render a decree against two defendants, over one of whom it had acquired no jurisdiction, and that this appeared on the face of the decree, we would only reverse the decree as to him, and affirm it as to the other, especially where it was of such a character that it might well have been rendered

Ralston v. Hughes.

against the one served. This is a familiar principle, and every day's practice. Suppose this very decree were now before us on appeal, unquestionably we should only reverse that part, in which the court overstepped the law, leaving the decree to stand as to this lot precisely as it is. If we would affirm that portion of the decree on appeal, surely we cannot pronounce it utterly void in this collateral action, and thus destroy a title acquired in good faith on the confidence of a decree rendered by a court of the highest original jurisdiction known to our laws. That title depends upon that portion of the decree in which not even error appears; and why should it be condemned as worthless. Confidence in judicial proceedings, and judicial sales, must not be thus ruthlessly shaken or destroyed. Even admitting, then, which I repeat we do not affirm, that the decree, so far as it affects lands beyond the bounds of Adams county, was void; still the court had a right to order this lot to be sold, in satisfaction of the mortgage, and the sale made in pursuance of the exercise of that lawful authority, was valid.

The questions, in relation to the tax-title, are disposed of in few words. The land was sold for taxes on the 3d day of May, 1841, for the taxes of 1840, to Robert Tillson, who was at the time of the assignment of the tax, and till within a short time of the sale, the owner of the premises by virtue of a deed, executed in 1836 by Patten, the mortgagor. At least, until the mortgagee has taken possession of the mortgaged premises for condition broken, the owner of the equity of redemption is to be considered the owner of the land, and is liable for the payment of the taxes assessed upon it, while he is thus seized of the title; and, according to the rule laid down in Choteau v. Jones, 11 Ill. 300, he can acquire no title by becoming a purchaser at a sale for those taxes; such a purchase is but another mode of paying those taxes which it was his duty to have paid before the sale.

There is another conclusive answer to this tax-title, which is, that it was entirely cut off by the decree of foreclosure. Tillson purchased at the tax-sale in 1841. He was made a defendant in the bill of foreclosure, which was filed in February, 1844. And at the following April term the decree was entered, adjudging " that the equity of redemption of the said defendants in the land

specified in said bill, filed in this cause, be forever barred and foreclosed. Said lands are described as follows," &c. Here is a decree cutting off all and every right which Tillson or any of the other defendants in that suit had in the premises, and which still remains unreversed nor vacated. When the master sold, by virtue of that decree, he sold all the title which Tillson had in the premises, whether derived from the mortgagor or any other source. By the terms of the final decree, approving of the master's report, as we shall presently see, the purchaser was fully seized of all the title of all the defendants in the premises. The Circuit Court, therefore, erred in admitting in evidence the tax deed for the purpose of proving an outstanding title. That deed was improvidently made, for at the time it was executed, whatever right, if any, which Tillson had acquired at the tax sale, had been divested by the decree of a court of competent jurisdiction.

Upon the argument, it was objected to the decree that it did not, in express terms, order a sale of the mortgaged premises. After decreeing the foreclosure, as above quoted, and describing the premises, it proceeds : " That the said sale be made by the Master in Chancery of said county." This follows immediately after the description of the land, and in that description the county of Pike was the last preceding county named, so that it was also objected, that the master in Pike and not in Adams should have made the sale. All of these objections are answered by the final decree of the court, which approves of the Master's report of the sale, and orders that Ralston, the purchaser, "be fully seized and vested with all the title and interest of the said defendants in and to the said premises, according to the tenor and effect of the deed mentioned in the said master's report." Voorhees *v.* Bank U. S. 10 Peters, 471.

I am of opinion that the judgment should be reversed.

*Judgment reversed.*