PALMER's administrators *against* MEAD and others.

On a bill of foreclosure, the title of the mortgagee cannot be investigated.
Therefore, where the plaintiff in a bill of foreclosure having proved the execution of the mortgage deed and of the note which it was given to secure, the defendants, who, as creditors of the mortgagor, had attached the mortgaged premises, by way of defence against the bill, offered evidence to shew, that such deed was given to defraud creditors in violation of the statute against fraudulent conveyances; it was held, that such evidence was inadmissible.

THIS was a bill in chancery to foreclose mortgaged premises.

On the hearing, at *Fairfield, December* term, 1826, before *Peters,* J., the plaintiffs exhibited the mortgage deed, and the note which it was given to secure, and proved the execution of them. Three of the defendants, *Job, Isaac* and *Manoah Mead,*

having proved themselves to be attaching creditors of the land mortgaged, whose suits were pending, by way of defence against the bill, offered testimony to shew, that the deed was executed, by the grantor to the grantee, to defraud the creditors of the grantor, and these defendants among them, in violation of the statute against fraudulent conveyances. This testimony was objected to; and the court rejected it. To revise this decision, the defendants moved for a new trial.

The case was argued before this Court, in *June*, 1827, by *Sherman* and *Hawley*, in support of the motion, and by *N. Smith* and *Betts*, contra. After some consultation among the Judges, it was continued *to advise*.

In support of the motion, the counsel for the defendants contended, 1. That the mortgage deed in question, having been given to defraud creditors, was, as against those creditors, among whom the defendants were included, *utterly void*, vesting in the grantee *no right* whatever. *Rob. Fr. Con.* 591. *Stat.* 247.

2. That a plaintiff in chancery, who seeks for a decree in his favour, must always shew a right in himself. The rule is universal, that a decree for the plaintiff must be based upon some right in him. 2 *Swift's Dig.* 219. 220. The allegation in a bill of foreclosure, that the plaintiff has title, by a mortgage deed, is a material allegation; and the general finding in the plaintiff's favour establishes this fact.

3. That on general principles, a finding and decree in the plaintiff's favour, on this bill, would be conclusive against the defendants, in a subsequent action of ejectment. 1 *Phill. Ev.* 262, 3. 223, 4. *Bul. N. P.* 234. *Whately* v. *Menheim* & al. 2 *Esp. Rep.* 608.

4. That if the plaintiff in a bill of foreclosure must allege a title in himself, and must support such allegation by proof, it is competent to the defendant to examine that proof, and to counteract it by opposing evidence. If any evidence, even *prima facie*, may be received in support of the plaintiff's title, it is because his title must be proved. Is this proof to be *ex parte*? May not the defendant be heard upon it? If the plaintiff attempts to shew, that he is mortgagee; why may not the defendant shew, that he is not? If the plaintiff shews a paper, claiming it to be a deed; why may not the defendant shew,

that it is not a deed? Why make him a party, if he is not to have the rights of a party? In *Giles* v. *Baremore* & al. 5 *Johns. Chan. Rep.* 545. which was a bill of foreclosure, the defendants relied on a presumption of payment, founded on the lapse of time; and the Chancellor said, (*p.* 550.) he had a right to insist on his ample and complete title, and to rest it upon any of the facts or presumptions warranted by the case. *De Butts* v. *Bacon* & al. 6 *Cranch* 252. before the supreme court of the *United States,* was also a bill of foreclosure; in which the defendant set up the defence of usury; and the court in which the cause was tried, considering the contract to be usurious, decreed the mortgage to be void. This decision was affirmed.

*Fairfield,*
June, 1828.

Palmer
*v.*
Mead.

According to Judge *Swift,* usury will constitute a defence to a bill to foreclosure. 2 *Swift's Dig.* 197. Why so? Manifestly, because the deed, in such case, is *void.* But is not a fraudulent conveyance equally void?

The decision in this case, in the court below, was founded on a *dictum* in 2 *Pow. Mort.* 1044. copied by Judge *Swift,* first into his *System* and afterwards into his *Digest.* The foundation of this *dictum* is an anonymous case in 2 *Ch. Ca.* 244. But that case does not support the doctrine. There, in consequence of an order of the court, directing possession to be given to the mortgagee, there was a process of contempt for not delivering it accordingly; upon which the heir of the *mortgagor* set forth a title, which the *mortgagee* was not permitted to controvert; and thereupon the contempt was discharged. If the case establishes any general principle, it is, that the mortgagee cannot controvert the title of the mortgagor, under whom he claims.

The reason given for the rule claimed by the plaintiff, is, that the mortgagee, on a bill of foreclosure, cannot *amend* his title. But is not the title of the mortgagee strengthened, by extinguishing the equitable title of the mortgagor?

The counsel for the plaintiff insisted, That the rule was well settled, both in *England* and in this state, that on a bill of foreclosure the title of the mortgagee cannot be investigated; but he will be left to pursue legal means to establish it. 2 *Pow. Mort.* 1044. 2 *Swift's Syst.* 439. 2 *Swift's Digest* 197. In a bill of foreclosure, the plaintiff does not seek for any legal title; but simply, that the mortgagor's equitable right may be

*Fairfield,*
June, 1828.

Palmer
*v.*
Mead.

taken away.   The plaintiff's title is not put in issue, by the bill. It is true, that he must establish it *somewhere*, before he can get the land; but why not try it in a court of *law?*  The question is not to be litigated *twice;* and this being the case, it is most proper and consonant to the genius of our jurisprudence, as well as most convenient, that it should be tried at law.   This has been the uniform and well established course of proceeding in *Connecticut.*

A bill of foreclosure may be brought and tried in a different ent county from that in which the land mortgaged lies.  *Broome* v. *Beers,* 6 *Conn. Rep.* 198    This could not be done, if the title of the land could be investigated on such bill.

The defendants have not been injured, by the exclusion of the evidence offered by them.   They do not want to redeem; if they do, a decree of foreclosure will permit them to do so, within a limited time.   There is a clear right in the defendants to redeem, if they choose to do so; and this being the case, it is just and proper that the time within which this right is to be exercised, should be limited by a decree.

In reply, it was said, that the statute requiring suits brought for the trial of land to be tried in the county in which the land lies, is applicable only to actions at law, and not to suits in chancery.

Hosmer, Ch. J.   That the mortgage in question, on the facts offered to be proved, was utterly void in respect of creditors, has not been questioned, nor is it questionable.   The precise enquiry is, whether these facts may be proved *on a bill of foreclosure;* or whether the plaintiff will be left to pursue legal means in a court of law to establish his title.   The defendants insist, that the defence is admissible against the bill of foreclosure; and the plaintiff, that it is no defence here, but that the point, by our jurisprudence, is confined to the *law* courts.

The argument of the defendants has principally been founded on the law as established in other countries and states, where the diversities on the subject of mortgages between them and us, in many particulars, are numerous and great; and where on foreclosure, the land mortgaged is not only decreed to be sold, a proceeding never admitted here, but the possession is enforced to the purchaser.   There, the bill of foreclosure is

considered as a proceeding *in rem ;* (*Kershaw* v. *Thompson &*  *Fairfield,*
al *4 Johns Chan. Rep.* 609. and the cases there cited ;) and  June, 1828.
the doctrine of enforcing a delivery of the possession to the  Palmer
purchaser under a decree, is carried so far, that it is done not  *v.*
only when specially decreed, but on motion, when the decree  Mead.
on this subject is silent. The effect of this doctrine on the
jurisdiction and enquiries of the court, is obvious ; and it is
necessarily different from the law established here, where the
proceeding is not *in rem,* as has often been determined, and
will be shewn hereafter, and where there is no sale of the
mortgaged premises, nor possession enforced.

The ground on which this case has been decided by the
court, renders it both unnecessary and improper to investigate
the laws of other countries, or to pursue the train of the coun-
sel for the defendants. The court consider the law of *Con-
necticut,* long and frequently established, and without any di-
versity of opinon, as having conclusively settled this point, that
*on a bill of foreclosure,* the title of the mortgagee cannot be
investigated ; but that he will be left to pursue *legal* means to
establish it. At the same time, I remark, that of all the cases
cited by the defendants, there is *but one* that appears to be in
point ; and that is *De Butts* v. *Bacon &* al. 6 *Cranch* 252.
This case was brought before the supreme court of the *United
States,* on error, from the circuit court of the district of *Co-
lumbia.* It was a bill of foreclosure ; and the defence was a
plea of usury. The circuit court adjudged the contract to be
usurious, and decreed it to be void. The case, most probably,
was decided on the local law of the state in which the decision
was made. In all events, the grounds of determination, and
even the arguments of counsel, are all in the dark. The opi-
nion and act of the court is expressed in these few words :
" Which decree, this court, after argument, by *Swann* for the
appellant, and *Youngs* for the appellees, affirmed." No per-
son can more highly respect the decisions of this court, than I
do. They are to be considered as *precedents,* in all those
cases, where an ultimate jurisdiction is given them over the
determinations of the state courts ; and in all their proceedings,
both at law and in chancery, are justly entitled to high defe-
rence. But when their decisions are founded on the local law
of another state, they can have no application here ; and when
they are based on the principles of the common law or of
equity, if without argument of counsel or the citation of a case,

*Fairfield,*
June, 1828.

Palmer
*v.*
Mead.

or the reasons of the court, I cannot receive them as evidence of the law. The submitting of the mind to the arguments of men of great learning, talent and respectability, is rational ; but to the mere *ipse dixit* of any one, such submission is servile.

In all the other cases cited for the defendants, an answer shewing their inapplicability, might easily be given ; but as the decision of the case before us, founded on our own law, puts them out of the question, I feel myself neither called on to discuss, nor justified in discussing, them.

The court have assumed two principles as the basis of their determination ; that is, that the question between the parties relates to the *legal title* of the plaintiff ; and that by our law, on a bill of foreclosure, it is not the subject of enquiry.

1. If the facts offered in evidence, by the defendants, are sustained, they show the mortgage deed, as against creditors, to be utterly void. This proposition has not been questioned ; nor is it questionable. On the contrary, it has been insisted on, in the argument, that a determination between the parties on the point of title, is a conclusive bar to any suit at law.

Had the defendants conceded, that the title at law is valid, but that in equity the plaintiff cannot prevail, for want of equitable title, it would present a different question. *Saunders* v. *Dehew,* 2 *Vern.* 271. 2 *Pow on Mort.* 1046. The principle is familiar, and does not require a reference to cases. A court of chancery will leave a person to his remedy at law, if there is injustice or even hardship, in its interference. But the specific objection made in this case, is, that the plaintiff has no legal title ; in other words, that his mortgage, in respect of creditors, is a nullity everywhere.

2 The question then arises, whether by the established law of *Connecticut,* the legal title, on a bill of foreclosure, is, or is not, a subject of enquiry. The object of investigation, it must be remembered, is not what ought to be the law of the state. This would lead to an examination and discussion of principles. But it is, whether on this subject, the law has, *in fact,* been settled ; and if so, what that fact is.

As far back as the year 1796, in the 2nd volume of his " System of the Laws of *Connecticut,*" (*p.* 439.) it is said, by Judge *Swift,* " That on a bill of foreclosure, the title of the mortgagee cannot be investigated ; but he will be left to pursue legal measures to establish it." In 1803, the superior court,

consisting of six judges, on a bill of foreclosure, brought by *Fairfield*, *Ebenezer Hayden* against *John Belden*, on solemn argument, June, 1828. determined to the same effect. The same court, in 1807, in the case of *Owen* v. *Granger*, 2 *Day* 477. again decided, " That the legal title cannot be drawn in question, on a bill to fore-close." No etermination at variance with those I have cited, is even suggested to have taken place ; and on this subject, from an ea ly period of my practice, I have considered the law as settled. In *Swift's Digest, vol.* 2. *p.* 197. first published in 1823, nearly thirty years after he had reported the law on the point in question, the same author recites the expression taken from his *System,* " That on a bill of foreclosure, the title of the mortgagee cannot be investigated ; but he will be left to pur-sue the legal measures to establish it." He then adds : " Of course, it is not necessary that it should be brought in the county where the land lies. All the question that can arise, is, whether the mortgage deed has been properly executed : the validity of the title must be decided at law, and not in chance-ry." Thus far the author must be considered as declaring what the established law of *Connecticut* is. His competency as a witness to the fact in question, will not be controverted, when it is recollected, that he had compiled a system of the laws of this state, as early as the year 1796, in which he stated the established law then as he afterwards did in his *Digest* ; that he was appointed a judge of the superior court in 1801, and continued on the bench eighteen years, where he had a peculiar opportunity of being acquainted with the practice ; and that, undoubtedly, he was one of the judges, who declared the law in *Hayden* v. *Belden* and *Owen* v. *Granger.*

To the law as before recited Judge *Swift* subjoined this ob-servation : " Where the obligation secured by the mortgage is void, by the statute of usury, this will constitute a defence against a bill to foreclose ;" and for this law he cited 3 *Atk* 154. It is obvious to every person, who hears the successive passages recited, that the established law of *Connecticut* was declared. until the last sentence referring to *Atkyns.* This change of subject in the *Digest,* from the law of *Connecticut* to the chan-cery law and common law of *England,* is observable on many of his pages, and with no other notice than by a reference to some authority. There is recollected no determination in this state, that usury is a defence to a bill of foreclosure, by the in-validation of the mortgage ; nor has it been pretended. When

Palmer
*v.*
Mead.

therefore, the law is supposed, by Judge *Swift*, to be founded on the authority of a decision, made by Lord *Hardwicke*, and reported by *Atkyns ;* and when he had, a few sentences before, laid down the law of this state, in the most sweeping terms, and declared, that the *only question* in our courts, is, whether the mortgage deed has been properly executed ; and that the validity of the title must be decided at law, and not in chancery ; it would be unreasonable to infer, that the judge, in the sentence last cited, had reference to any subject but the *English* law.

Although it is unnecessary, I will remark *en passant*, that the case referred to by judge *Swift*, in *Atkyns*, was neither a bill of foreclosure, nor bearing any relation, even in the remotest degree, to the question before the Court.

It is a provision of statute law, that all suits brought for the trial of the title of land, or wherein *the title of land is concerned*, shall be tried in the same county where the land lies, or facts are done concerning which the title of land *may be* in question. Such suits are *local*, and must be brought in the county where the land is situated. Thus, the action of trespass *quare clausum fregit* is as much local as an action of disseisin is, although in the former the title of land is never necessarily in controversy. 1 *Swift's Dig.* 594. But as it *may be* controverted, this gives locality to the suit. Now, if on a bill of foreclosure, the title of the mortgagee *may be* brought into dispute, it clearly is as much a local action as is trespass *quare clausum fregit* or ejectment. The principle has always been admitted ; but on the ground that the title cannot be in question on a bill of foreclosure, it is established law, that it may be brought in one county when the land mortgaged lies in another. 2 *Swift's Dig.* 197. In the case of *Broome* v. *Beers*, 6 *Conn. Rep.* 198., it was recently decided, by this Court, that the title of land was not in question on a bill of foreclosure, and that it need not be brought in the county in which the land lies. It was said, by one of the judges, there being perfect unanimity on this point, that " the title of land is not in question ; and such suits have always been considered transitory." 6 *Conn. Rep.* 215.

It was suggested in the argument of this case, that the statute giving locality to suits, which may involve the title to land, was alone applicable to actions at law. To this observation the answer is without difficulty. In the first place, our courts, without exception, have been of an opposite opinion. It has

ever been considered, that the statute, either in its expression, or in its reason and spirit, was equally applicable to suits in chancery and at law. In the *Digest* of Judge *Swift*, (*vol.* 2. *p.* 197.) he takes it for granted, and assigns as the reason why a bill of foreclosure may be brought in a county where the lands are not situated, that the title cannot be investigated. "Of course," says he, "it is not necessary that it should be brought in the county where the land lies;" clearly implying, that if the title might be questioned, the bill must be instituted there. In *Broome* v. *Beers*, 6 *Conn Rep* 204. the learned counsel for the defendant in error, evidently proceeded in their argument on this ground. "The bill," say they, "was brought in the proper county. Local actions are those in which the title to land may be determined ; but on a bill of foreclosure the title is not in controversy." The same idea was adopted by the Court, and the suit was decided to be *transitory.* A second reply to the observation that the statute giving locality to certain suits is inapplicable to bills in chancery, is equally conclusive. In all the cases cited, the court declare, that the *title* is not in question. It is, therefore, of no importance, whether the statute is, or is not, applicable. Let it be admitted, that it is not. The opinion of the court alluded to, deprives the remark, in this case, of all its intended force.

It was argued at the bar, that after foreclosure, the title of the mortgagee would be strengthened ; and that for this reason, the point ought to be decided on the plaintiff's bill. I reply to this remark, that no additional strength is, or can be, given to a title, by a decree, which takes away the equity of redemption only, and in a suit, where the title cannot be, and is not, investigated ; and when the enquiry concerning it is referred *exclusively* to a court of law.

It has likewise been insisted, that a bill of foreclosure must aver a title to the land mortgaged ; and hence, that it must be proved. To this I answer, that in bills of this description, the only necessary averment on this point, is, that the defendant *executed a deed on condition.* 2 *Swift's Dig.* 656. Hence, as has justly been observed, by Judge *Swift*, "all the question that can arise, is, whether the mortgage deed has been properly executed." 2 *Swift's Dig.* 197. Of consequence, if the execution of the deed is not proved by two witnesses : or if it was forged ; or if it was obtained by duress, or by fraud ; or if it was executed by a feme covert : in these and similar cases, it

*Fairfield,* is *no deed,* and an indispensable averment of the bill is without
June, 1828. support.

Palmer
*v.*
Mead.

From the particulars disclosed I consider the fact to be un-
questionably proved, that by the law of this state, the legal title
of the plaintiff, on a bill of foreclosure, is never the subject of
enquiry, but that the point is within the exclusive jurisdiction
of the courts of law. And as no decision in opposition to this
principle has been referred to, it is a fair inference that none
exists.

To authorize the adoption of a new rule in annihilation of
the former, uniformly recognized and acted on, for more than
thirty years, and probably beyond the memory of any living
practitioner at the bar, some pointed injustice and overwhelm-
ing mischief should be made to appear. But what is the mis-
chief; what the injustice? The plaintiff must establish a title,
and the defendant may question it, in every possible mode.
This, however, must be done in a court of law; and is this an
objection? Is not a court of this description as competent to
decide on a *legal* title as a court of chancery is?

There is not in the common law a maxim more eminently
just, and promotive of the public convenience, than that of
*stare decisis.* It was once said, by Mr. Justice *Powell,* em-
phatically, " Nothing is law that is not reason ;"—" a maxim,"
observed that eminent lawyer and scholar, Sir *William Jones,*
" in theory excellent, but in practice dangerous, as many rules,
true in the abstract, are false in the concrete ; for since the
reason of *Titius* may, and frequently does, differ from the reason
of *Septimius,* no man, who is not a lawyer, would, in many
instances, know what to advise, unless the courts were bound
by authority, as pagan deities were supposed to be bound by
the decrees of fate " *Jones on Bailment* 84. Besides, if law
well established may be annulled, by opinion, a foundation is
laid for the most restless instability. The decisions of one
court may be overruled by another court ; and those of the
latter will only have a transient efficacy, until some future
court, dissatisfied with them, shall substitute new principles in
their place. No system of inflexible adherence to established
law can be as pernicious as such ceaseless and interminable
fluctuations.

BRAINARD and LANMAN, Js., were of the same opinion.

PETERS, J.   I cannot concur with the Chief Justice, though he relies on my opinion in *Broome* v. *Beers,* 6 *Conn.* ep 198., which is as conclusive as any other *argumentum ad hominem.* In forming that opinion upon the question of jurisdiction, I followed implicitly the decisions of my predecessors, who were probably misled by *Powell's* abridgment of an anonymous case in 2 *Chan. Ca.* 244., which, according to Chancellor *Kent,* is " so briefly and so loosely reported, as to be scarcely deserving of any consideration." *Kershaw* v *Thompson,* 4 *Johns. Chan. Rep.* 616.   This point was of minor consideration in *Broome* v. *Beers ;* and, of course, received less attention than the principal point in the case.   I have since examined the subject. The consequence is a change of opinion.   " With respect to the relief that can be afforded here," says Chancellor *Kent,* " I take the rule to be, that a plaintiff who comes to a court of equity for relief against a judgment at law, or other legal security, on the ground of usury, cannot be relieved, except upon the reasonable terms of paying to the defendant what is really and *bona fide* due to him.   On the other hand, if the party claiming under such usurious judgment, or other security, resorts to this court to render his claim available, and the defendant sets up and establishes the charge of usury, the court will decide according to the letter of the statute, and deny all assistance, and set aside every security and instrument whatsoever, infected with usury." *Fanning* v. *Dunham,* 5 *Johns. Chan Rep.* 142. The same point was decided, by the supreme court of the *United States,* in *De Butts* v. *Bacon* & al. 6 *Cranch* 252., upon a bill to foreclose a mortgage, to which usury was pleaded. The court below decided the contract to be usurious, and decreed the mortgage to be void ; which was affirmed by the supreme court.   I would, therefore, advise a new trial.

DAGGETT, J.   It is understood, that the judge rejected the testimony offered by the defendants, on the authority of several decisions made at the circuit within the last thirty years.   It is not pretended, that the question has ever been decided in this court.   It is, therefore, open for examination.

Those decisions are founded entirely on the doctrine laid down in 2 *Swift's Dig.* 197.   2 *Chan Cas.* 244.   *Pow. on Mort.* 1043.   Judge *Swift* says : " On a bill to foreclose, the title of the mortgagee cannot be investigated, but he will be left to pursue the legal measures to establish it.   Of course, it is not

necessary to be brought in the county where the land lies. All the question that can arise, is, whether the mortgage deed has been properly executed ; the validity of the title must be decided at law, and not in chancery   But when the obligation secured by the mortgage is void by the statute of usury, this will constitute a defence against a bill to foreclose." In support of the first of these positions, *viz.* that the title cannot be investigated on a bill to foreclose, he cites 2 *Chan. Cas.* 244   In that case, " a mortgagee sued to have his money, or that the defendant be barred of his equity of redemption.  It happened, that by subsequent orders, possession was ordered to the mortgagee, and contempt prosecuted for not delivering the possession, and the heir who was so prosecuted, set forth in his examination a title ; and now the mortgagee would have debated the title, but was not admitted, because the course of the court is, and the court can go no further in such a bill, but to take away the equity of redemption, and leave the defendant to such title as he hath, but *not to amend it ;* and this was the true and ancient course, though of late sometimes the contrary hath been done.   And now the Lord Chancellor agreed thereto, and discharged the contempt."  Judge *Swift* takes his position from the case quoted.   *Powell* also uses the words found in the case   To that case, then, we must look as to the sole authority, that on a bill of foreclosure the title of the mortgagee cannot be investigated   If I understand this case, it may support any thing but the position for which it is introduced.   It is not stated who the parties to the bill were, nor what the decree was, but it seems possession had been ordered (a practice with which we are not familiar, but which is well known in *England,* and has been substantially adopted in *New-York,*) and the heir, who was so prosecuted for a contempt in not obeying the order, set forth in his examination *a title.*   The mortgagee would have debated this title ; but the court would not permit him, that is, would not suffer him to amend his title ;—and thus discharged the heir from contempt for disobeying the order. The court examined and *investigated the title of the mortgagee,* so far as to decide, that it was not sufficient, but would not permit him to amend it, on his bill to foreclose, and therefore decided against him, and discharged the heir from contempt. The case decides, that on a bill to foreclose, the plaintiff must rely on his title, and if he would amend it, must resort to other proceedings to do it ; and it decides no more.

Chancellor *Kent*, speaking of this case, (4 *Johns. Chan. Rep.*
516.) observes :—" It is so briefly and loosely reported as to
be scarcely deserving of consideration." It seems too much
to set up the doctrine that a title of a mortgagee cannot be in-
vestigated on a bill to foreclose, upon the authority of this al-
most unintelligible case, especially as it is unsupported by any
case or practice in *Westminster Hall*, or elsewhere. Yet the
doctrine rests on this case entirely, so far as *British* authorities
are cited.

Judge *Swift* also supposes, that the title is not drawn in
question, because a bill to foreclose is not necessarily brought
in the county where the land lies. It is admitted, that the bill
may be brought in the county where the mortgagor or mort-
gagee dwells ; but it is believed, that this practice is perfectly
consistent with the construction of the statute, which directs
" that all *suits* wherein the title to land is to be tried and de-
termined, and all actions of trespass *quare clausum fregit*, shall
be tried in the county where the land lies." This statute re-
gards actions *at law*, and has never been deemed to apply to
bills in equity, wherein the title to land may be decided. A
bill to redeem, when the mortgagor proceeds on the ground
that the mortgage has been satisfied, and therefore prays for a
restoration of his legal title, and a bill for the specific execution
of a contract to convey land, both involve the question of title ;
and yet it is not necessary, in either case, to bring the bill in
the county where the land lies ; nor is such the practice. The
statute of our state, like the *English* law, provides for the trial
of titles to land.in the vicinity, because the jury who are to
settle titles come from the vicinage ; but surely such a provis-
ion is useless, where the questions are all to be settled by the
judges. Hence, our superior court held jurisdiction of bills in
equity, wherein the title to land is concerned, lying in our
neighbouring states ; and the notable case of *Penn* v. Lord
*Baltimore*, 1 *Vesey* 444. respecting lands in this country, in
the *English* courts of chancery, is of the same character.

But the latter position of the commentator, *viz*. that usury
is a good defence to a bill of foreclosure, proves that the title
in such bill may be investigated and defeated. If usury be a
good defence, for the reason assigned by the commentator, *viz*.
that the statute declares the contract void, it is difficult to see,
why *fraud* may not be. In both cases, the deed is, by statute,
declared *utterly void*. The authority, however, cited by the

Fairfield, learned commentator, (3 *Atk.* 154.) no more supports this po-
June, 1828. sition, than the authority from 2 *Chan. Cas.* 244. supported
Palmer    the other.
v.
Mead.          Let us now examine the question on principle.    It is very
clear, that by a decree of foreclosure, the rights of the mortga-
gee become materially varied and strengthened, and of course,
those of the mortgagor and those claiming under him, in an
equal degree, diminished.    The object of the bill is to appro-
priate the pledge, and to cut off all right to redeem, and give a
perfect title to the mortgagee.    The decree effects this object.
The mortgagor can never redeem, except by paying the in-
cumbrance.    When the time limited for the payment of the
mortgage money has expired, the debt is extinguished, and the
estate becomes absolute, according to the decision of our
court.    *Derby Bank* v. *Landon*, 3 *Conn. Rep.* 62.

The bill proceeds on the ground of a debt due, and a valid
collateral security, by a mortgage deed.    That the deed was
forged ;—that it was fraudulently substituted for another ;—
that it was obtained by duress; or that the grantor was a feme
covert, when the deed was signed, may unquestionally be
proved.    In the case of *Smith* v. *Chapman, 4 Conn. Rep.*
344. this court sustained a bill in equity to validate a mortgage
deed, where the wife of the mortgagor was one of the subscri-
bing witnesses, and therefore the deed not duly attested within
the requirements of our statute.

If in these cases, the court would permit a defence, and de-
ny to the plaintiff any relief, because he had no valid title, why
should not the court uphold a defence, when the deed is declar-
ed utterly void by positive law ?—A court of equity will no
more enforce a usurious, a fraudulent or a corrupt contract,
than a court of law.    Such contracts will receive no counte-
nance or support, either at law or in equity.    They are, in the
words of the law, *utterly void* every where.

Again, it is admitted in this case, that the mortgagor, or his
assigns, might show that the debt had been paid, in part or in
full.    It will also, it is presumed, be acknowledged, that the
defendants might show, that the debt, being negotiable, had
been assigned, and the interest in the land released to a third
person.    If then, it may be shewn, that the plaintiff's title was
gone, why not show, that he never had one ?

Moreover, it has been decided repeatedly, by the Chief
Justice, and by other Judges in conformity thereto, that a

bill to foreclose must *aver a title* in the plaintiff. The bill without such allegation, would be insufficient. The court could not, on a bill destitute of such an averment, decree a foreclosure. Now, it is utterly beyond my comprehension, that in any proceeding, either at law or in equity, a defendant may not show, that a *material* allegation of the plaintiff is untrue. If such is the law in this case, it is a solitary exception to general rules in all analogous cases.

Surely, there can be nothing in the nature of this defence, which should incur the censure of a court of equity ; nor can a fraudulent conveyance ever deserve peculiar favour or protection. Nay, it is a rule in a court of equity, not to interpose and decree a foreclosure, when there is injustice in the case. The court will refuse such a decree. *Powell on Mort.* 1045, 6. 2 *Term Rep.* 271.

But there are not wanting authorities of great weight, bearing directly on this point. In the circuit court of the *United States*, for this district, the late Judge *Livingston*, in the case of *Austin* v. *Lyman*, after a discussion of this question, in which the doctrine of *Swift* and *Powell* was examined, decided in favour of the defence of usury to a bill of foreclosure. H is extensive practice at the bar, and great experience on the bench of the supreme court of *New-York* and of the *United States*, entitle his decision to much respect. In *Fanning* v. *Dunham, 5 Johns. Chan. Rep.* 42., Chancellor *Kent* thus observes : " With respect to the relief that can be afforded here, I take the rule to be, that a plaintiff who comes to a court of equity for relief against a judgment at law, or other legal security, on the ground of usury, cannot be relieved, except upon the reasonable terms of paying to the defendant what is really and *bona fide* due to him. On the other hand, if the party *claiming under such usurious agreement or other security, resorts to this court to render his claim available, and the defendant sets up and establishes the charge of usury, the court will decide according to the letter of the statute, and deny all assistance, and set aside every security and instrument whatsoever infected with usury.*" In the present case, the plaintiff resorts to the superior court " to render his claim available," by appropriating the pledge and cutting off the equity of redemption, as was before remarked. Is not, then, the position of this learned Chancellor directly in point ? J am aware, that the case before the Chancellor was a bill to *set aside* a judgment,

*Fairfield,*
June 1828.

Palmer
*v.*
Mead.

and other *legal securities,* on the ground of usury ; but in the remarks above quoted, the Chancellor is laying down the law in cases of a bill *to relieve* against usurious securities, and in a bill to *render them available by foreclosure.* He pointedly shows the difference, which, indeed, he demonstrates from a view of all the authorities, and the result is, that when a plaintiff seeks to enforce such securities—*to render them available,*—usury may be proved, and if proved, the court will deny all assistance. It will not be urged, that *if usury* may be interposed as a defence, *fraud,* when alleged by a third person not party to the fraudulent deed, will not equally avail.

In the case of *De Butts* v. *Bacon* & al. 6 *Cranch* 252. the supreme court of the *United States,* held the defence of usury good on a bill to foreclose, and affirmed the judgment of the circuit court of the *United States* for the district of *Columbia,* which decreed the mortgage void on that ground. The question now made, to be sure, was not raised in that case ; but is not the silence of the learned court and bar on the point, full evidence that it could not be raised with any prospect of success ? In *Baldwin* v. *Norton* & al., 2 *Conn. Rep.* 161. on a bill of foreclosure, brought by a second mortgagee against the mortgagor and the first mortgagee, one question was, whether the plaintiff could introduce proof of usury in the first mortgage. The court decided, that he could not, *because usury was not alleged in the bill.* The nine judges gave their opinions *seriatim* ; and in every instance, the question of usury was resorted to, discussed and answered. No judge suggested any difficulty in this proof to destroy the title of the mortgagee. Judge *Swift,* from whose *Digest* I have quoted above, did not suggest the contrary idea. Judge *Edmond* expressly recognized the doctrine, that usury would defeat the title. Is it not incredible, that neither of the judges should have resorted to an objection, which, it is now alleged, is the familiar practice of our courts ?

It is urged, however, that our courts have constantly sanctioned the ground now taken, by a majority of the court. I am not aware, nor do I believe, that there has ever been a decision on the point now raised—*viz.*—whether fraud may be given in evidence, by a second mortgagee, or an attaching creditor, to defeat the first mortgage. The first time I ever heard a suggestion of the kind, was in *Owen* v. *Granger,* at *Hartford,* in 1802, when the Court, Judge *Swift* presiding,

held, that usury could not be given in evidence on a bill of foreclosure. This was heard with astonishment, by several gentlemen of the profession, some of whom lived to witness his retraction of that opinion in his *Digest* of 1823,—as above quoted. I believe this opinion was followed at the circuit, in several cases; but it has never received the sanction of this Court till now.

The case of *Broome* v. *Beers,* 6 *Conn. Rep.* 198. is also cited as an authority bearing on this case. The first point decided, as appears by the condensed view of it, by the reporter, is: "A bill of foreclosure need not be brought in the county in which the land lies, as the title of the mortgagee cannot, under such a bill, be investigated." The land lay in *Litchfield* county ;— the cause was tried in *Fairfield* county. This was a writ of error from a decree of Judge *Brainard.* On the trial of the writ of error, only three judges sat, the judge who tried it being absent. The Chief Justice and Judge *Lanman* reversed the judgment, against the opinion of Judge *Peters* and the Judge who tried it at the circuit. The view of the first point, as stated by the reporter, is faithfully taken from the opinion of the Court. That question, however, was not agitated at the bar, nor even mentioned by counsel. It probably appeared on their briefs. But I would ask, what point was investigated and decided? The only point on the merits was, whether the title of *Beers,* the plaintiff, was *prior* to that of *Broome,* or whether it was *contemporaneous* with it. The Court held, that by the representation, which *Beers* made to *Broome,* prior to his taking the deed, that the deed to *Minor,* under whom *Beers* claimed, and the deed to *Wright,* under whom *Broome* claimed, were contemporaneous, the plaintiff, *Beers,* had no priority against *Broome,* but that they were tenants in common. The *title to land* thus lying in *Litchfield* county, was decided, by the superior court, sitting in *Fairfield* county, or else nothing was decided.

This decision supports, if it needed support, the position which I took before, that bills in equity relating to the title of land, need not be brought in the county where the land lies. But with all deference, I repeat the question, what was decided between these parties? The bill was brought by *Beers,* a mortgagee, against *Broome,* to *foreclose.* What was investigated, and what decided? Obviously, that *Beers* had no priority of title over *Broome.* To decide that one man has not

priority of title, is deciding on the title. The superior court decided, that *Beers'* title was *prior*, and granted the bill. The supreme court of errors decided, that *Beers* had no priority, and that, to use the language of the opinion, " it would be contrary to the first principles of equity, often recognized and applied, to give success to the plaintiff's bill." But if I rightly apprehend the doctrine now established, it is, that the title of the mortgagee cannot be investigated on a bill of foreclosure. In the language of Chief Justice *Swift,* " all the question that can arise, is, whether the mortgage deed has been properly executed. The validity of the title must be decided at law, and not in chancery." The mortgage deed was properly executed, as appears in the case of *Beers* v. *Broome ;* then the superior court was correct in granting the bill ; and the supreme court of errors could not, consistently with the principles of the case now in judgment, reverse the decision. The marginal note, therefore, in *Beers* v. *Broome*, should read thus : " As the title of the mortgagee cannot be investigated on a bill to foreclose ; therefore the bill need not be brought in the county where the land lies. On this bill to foreclose, *Beers'* title is investigated, and found not prior to *Broome's,* but contemporaneous ; therefore, he has no right to foreclose *Broome*."

I know not how to escape from this result, unless it be said, that this defect in *Beers'* title could not be investigated in a court of law ; and even then, the title is investigated in a county where the land did not lie. I ask, why not ? Suppose *Beers* to be in possession, and *Broome* to bring ejectment for an undivided part of the land ; could not *Broome* defeat *Beers'* priority, by the same testimony, which would defeat it in a court of chancery ? I can see no difference. I trust, then, that the case of *Beers* v. *Broome* will not add to the weight of authority, which before that was to be found in 2 *Chan. Cas.* 244. which Chancellor *Kent* said was deserving of no consideration. I must be pardoned for saying, that instead of being an authority for any point, it is *felo de se.*

The absurdity of this doctrine may be further illustrated thus. Suppose that *A.* mortgages to *B.* land worth 1000 dollars, to secure a debt of 300. *A.* afterwards mortgages the same land to *B.,* for the security of a debt of 500 dollars, the consideration of which is usurious, and, of course, the security void. *B.* brings his bill to foreclose both mortgages. The title

to neither can be investigated on this bill, and therefore a decree must pass for foreclosure, unless *both debts* shall be paid within a specified time. If *A.* bring his bill to redeem, the law is well settled, that he cannot prevail, except on paying both debts. 5 *Johns. Chan. Rep.* 142. Suppose the mortgagor is in possession, and the mortgagee brings ejectment ; the mortgagor cannot defend himself, for the deed first given is good, and the mortgagee has only to shew *that*, to enable him to recover. Or suppose the mortgagee is in possession, and the mortgagor brings ejectment, for a like reason he cannot recover ; for there is a valid deed against him. In such case, then, a usurious security for 500 dollars, is enforced, the pledge appropriated, and the equity of redemption cut off, in defiance of a plain statute, which declares it absolutely void.

This case has been under the consideration of the court two terms, having been continued for advisement As the judgment appears to me unfounded in principle, and destitute of all support from authority, I have taken the liberty of examining it with freedom.

This decision embraces the following positions.

1. That a bill in equity to establish or defeat a title to land, must be brought in the county where the land lies.

2. That the title of the mortgagee may not be investigated on a bill of foreclosure ; and therefore,

3. That an allegation of title in the plaintiff in such bill is unnecessary ; or, if necessary,

4. That it *need not* be proved by the plaintiff, and *cannot be disproved* by the defendant.

5. That a pledge may be appropriated by a bill and decree of foreclosure, when the mortgage deed was usurious or fraudulent, in direct opposition to the statute declaring them *utterly void.*

6. That usury and fraud are thus made the basis of a decree in a court of chancery.

As I cannot admit either of these positions, I feel constrained to dissent from a decision, which, in my judgment, involves them all.

New trial not to be granted.