OLIVE C. NOURSE *vs.* J. EDWARD LYCETT.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 2d, 1931—decided March 8th, 1932.

*Charles S. Hamilton,* for the appellant (plaintiff).

*Leo Davis* and *Louis Goldschmidt,* for the appellee (defendant).

HAINES, J.   The plaintiff brought her action in two counts, alleging in substance in the first count that on October 6th, 1927, she was the owner of certain goods and chattels located in a house in Westport, consisting of certain printed formulas for "Japol Remedies" so-

called, with various accessories for making, containing, advertising and selling the same, as well as some materials on hand, together with a large number of books, old coins, geological specimens and souvenirs, valued at $10,000 to $12,000, and that the defendant on that day wilfully and without color of right and against the will of the plaintiff forcibly took such goods from her possession and carried them into the public street and left them exposed to the inclemency of the weather and otherwise damaged them, and that thereby she had lost all the benefits and profits which would have accrued to her by the use thereof. The second count made similar allegations, with the further statement that the defendant claimed to act under color and authority of an execution in ejectment and that he unlawfully, negligently and improperly, and without any notice to the plaintiff or giving her an opportunity to care for her property, removed the goods from the house in the manner theretofore alleged, and gave the plaintiff no notice that the goods had been removed or furnished her any opportunity to care for them. By reason of these things the plaintiff claimed to have been deprived of her means to manufacture and sell the remedies referred to, and thereby lost a large amount of money. The defendant entered a general denial and set up a claim to have acted lawfully as a deputy sheriff under a lawful execution in foreclosure. The jury gave verdict for the defendant, and upon denial of the plaintiff's motion to set it aside as against the law and evidence, the plaintiff appealed.

In the third paragraph of her request for a finding and now in the third assignment of error, the plaintiff claimed that the court erred in not holding and ruling upon the testimony of the defendant himself, that no defense or justification for his acts had been shown

and in refusing to set aside the verdict on that ground. It thus appears that it is upon this ground alone that the claimed error in refusing to set aside the verdict rests. In an amendment to the finding the trial court also states that counsel for the plaintiff in his arguments upon the motion to set aside the verdict, expressly confined the scope of the motion within those limits. The trial court accordingly ordered the certification of the entire evidence of the defendant, for our inspection.

The jury could reasonably have found from that evidence that the defendant was a deputy sheriff living in Norwalk and had been serving in that capacity for about seven years, and that the acts in question were done by him as deputy sheriff, having in his hands an execution for the possession of the premises in which these goods were found, issued by the clerk of the Superior Court and dated September 27th, 1927, which was Tuesday. He received the execution on the following Saturday, and the next Monday he went to the plaintiff's house designated in the execution. He knocked at the doors and got no response, and on the way back he inquired of parties in Westport if they had seen the plaintiff or knew where she could be found and received a negative reply; he went the following Wednesday but again was unable to get any response at the doors; all this time he understood the plaintiff lived in this house; he returned again with the execution on the morning of Friday, October 7th, but could get no response to knocks at the doors, though he also went around the house and knocked at the back door; he left again, and again returned about two o'clock that afternoon with two capable men, and knocked at the doors and tried to get some response, but could not; he went to a lady across the street and inquired where the plaintiff was

or if she had seen her, but could obtain no information of her whereabouts. He then tried a front door and found it unlocked, and he and his men entered the house and removed what goods and personal effects he found there, putting them on the grass between the trees and the road, piling all of them up in an orderly way and placing upon them some mattresses; there was only a small amount of this property, and not more than could be put into an ordinary truck; the weather was hot and dry, and there was no rain that day or that evening. He went to a selectman of Westport and within five minutes after completing the removal of the goods, notified him that he had done so and told him where the goods were. He then made return upon the execution upon the same day, Friday, October 7th, 1927.

Upon this state of facts the plaintiff claims the defendant failed to conform to the requirements of our law as stated in General Statutes, §§ 5937 and 5204, Rev. 1918, now §§ 5786 and 5090, Rev. 1930. The former statute requires that the officer shall "repair to the debtor's usual place of abode, if within his precincts, unless he shall find him at some other place, and make demand of the sum due on such execution, with his lawful fees; and, upon refusal or neglect of payment, he shall indorse on the execution when and where he made such demand, and levy the same on the personal estate of the debtor."

Plaintiff's counsel mistakes the application of these statutory provisions. The title of § 5786 is "Levy on personal estate" and the statute refers to an execution issued to recover upon a money judgment only, as its terms and the other provisions of that chapter plainly indicate. In the nature of the case it would be impossible to levy an execution of ejectment for possession of real property under a foreclosure proceeding

in accordance with the terms of this statute, which provides in detail how the personal property levied upon shall be taken and sold to satisfy the judgment in question. The execution in the present case falls within the provisions of § 5090, Rev. 1930, entitled "Execution of ejectment on foreclosure judgment."

Formerly it was held in this State that to obtain the actual appropriation of the mortgaged real estate to the payment of the mortgage debt, it was necessary for the mortgagee to first obtain a judgment for the debt in an action of foreclosure, and a decree that the title should be absolute in the mortgagee upon the failure of the holder of the equity to pay on or before a day fixed by the court, and then by a separate action in ejectment obtain a further decree entitling him to the actual possession of the premises in which his title had become absolute under the foreclosure decree. This procedure was adhered to in the earlier cases in this State. *Broome* v. *Beers,* 6 Conn. 198; *Palmer* v. *Mead,* 7 Conn. 149. But about 1830 it became the established practice to combine these two actions in effect, giving full relief to the mortgagee in a single action of foreclosure, the judgment not only determining the debt and the absolute title of the mortgagee after the law day, but including a direction that thereafter the mortgagee be put in actual possession of the premises. General Statutes, § 5090; *Cowles* v. *Woodruff,* 8 Conn. 35; *Frink* v. *Branch,* 16 Conn. 260; *Alden* v. *Trubee,* 44 Conn. 455; *Middletown Savings Bank* v. *Bacharach,* 46 Conn. 513, 526. Upon the failure of the plaintiff in the present action to redeem the property, and the law day having passed, the title of the mortgagee Davis, became absolute, and the plaintiff could no longer claim a right to an opportunity to pay the judgment or retain the title to or possession of the property. There was therefore no occa-

sion for the officer holding an execution in ejectment to make a demand upon her for the payment of the judgment debt. The court had found that she had had actual notice of the pending action of foreclosure and she was conclusively bound to know that, the law day having passed, Davis was the holder of the legal title to the property which she was occupying, and that it was her duty to surrender it to him. This she did not do, and the execution in ejectment was therefore issued and put into the hands of the defendant as deputy sheriff for service. Therein the officer was directed by the court as follows: "These are therefore, by authority of the State of Connecticut, to command you that you deliver unto the said Leo Davis, the equity, seizin and possession of the above described piece of land, and thereupon cause him to have seizin and possession thereof in due form of law."

The statute under which this execution was issued, prescribes no specific method by which the officer shall carry out the mandate thus imposed upon him. Obviously an officer would not be justified under this order, in imposing upon the mortgagor in possession, any unreasonable or illegal hardship or loss in either person or property. On the other hand, with full notice that his possession is then illegal, the mortgagor cannot prevent the officer from performing his duty, by resisting, or by absenting himself and locking the officer out of the premises. In the present case the plaintiff, though charged with knowledge of this proceeding and still holding possession, absented herself from the property leaving no notice of her whereabouts. Under these circumstances, the officer acted with commendable consideration for the plaintiff, visiting the premises on several occasions before entering the house, and inquiring as to her whereabouts.

Failing to obtain the information he sought and thus unable to make a demand upon her for possession of the premises by the exercise of reasonable diligence, he entered the house through an unlocked door, and removed such of her property as he found therein. He clearly used no undue or unreasonable force, nor did he injure, lose or misuse the property he found in the house. Whether the due care for this personal property which he was bound to use, required him to transfer it to another building instead of putting it on the grass within the limits of the public highway, we do not need to consider in the present instance because it appears that the weather was fair and warm and not inclement in any particular, and a selectman having charge of the public highway was notified at once that the goods were there, and particularly as the plaintiff herself took possession of the property at or about six-forty-five that same afternoon. We conclude the trial court was correct in ruling that the defendant was justified in the action he took under the circumstances of this case.

This was the controlling question in the case, and the general verdict imports that this and all other issues were found for the defendant.

Those assignments touching the refusal to charge as requested do not develop any error which is vital to the conclusion reached. One of these requests was in substance that even if a proper demand had been made, it was not necessary for the defendant to remove the goods of the plaintiff from the house, and when he did so he became liable in trespass for damages resulting to the goods from such removal. The case cited by the appellant in support of this proposition holds the contrary as to the duty of the defendant, and the request was properly denied. *Witbeck* v. *Van Rensselaer*, 64 N. Y. 27, 32. So far as the re-

quests were important and correct statements of the law, they were adequately covered by the charge as given.

Errors are claimed in three rulings on evidence. An examination of the record, however, shows that they were not prejudicial to the rights of the appellant.

Errors are assigned as to certain portions of the charge. The court told the jury that "When an officer receives an execution from a court to eject a defendant in such a case from the premises, the law requires that the officer, as a preliminary step before doing any act to eject the defendant from the premises or remove the defendant's goods, use due and reasonable diligence to make a demand on the execution of the defendant to vacate the premises and for payment of the costs of the execution. If, in the exercise of reasonable diligence, he is unable to find the defendant personally, he should go to her last known place of abode, in pursuance of his effort to make such a demand. If by due diligence he is unable to make such demand, he is warranted in proceeding to carry out the execution." This charge was too favorable to the plaintiff, and placed upon the officer in serving this writ of ejectment in foreclosure, a heavier burden than the law requires. We find no authorities which require a demand such as that stated in the charge, and it has been specifically held in Massachusetts that no demand is necessary in a case such as this. *Howe* v. *Butterfield,* 58 Mass. (4 Cush.) 302. This ruling, however, is subject to the necessary qualification that if a failure to make demand would of itself subject the possessor to unreasonable hardship or loss, it should be made where reasonably possible.

Error was also assigned as to the following charge: "The notice to the selectman, if you find such notice was given; the defendant's knowledge, if you find he

had such, that section 5981 of the General Statutes of the Revision of 1930 made it incumbent upon the selectman, if the plaintiff did not remove the goods within twenty-four hours, to remove and store the same at plaintiff's expense, and so forth, are facts among others for you to consider in determining whether in what the defendant did himself and by his helpers he exercised that care which the reasonably prudent man would have used under the circumstances." While the appellant does not claim that § 5981 was inapplicable to the situation, he does claim it was immaterial and irrelevant. That statute deals with procedure in summary process and certainly has no direct application to the present case, but even assuming that it did, the charge could have done the appellant no harm. An examination of the other portions of the charge as to which errors are assigned, discloses nothing of importance to the real issues of the case which was erroneous or prejudicial to the appellant.

There is no error.

In this opinion the other judges concurred.